UNITED STATES OF AMERICA

FEDERAL DISTRICT COURT OF MASSACHUSETTS

| | |
|---|---|
| LUIS ANGEL RODRIGUEZ,  )<br>    Plaintiff,                    )<br>                                          )<br>v.                                      )<br>                                          )<br>BOSTON PUBLIC SCHOOLS,  )<br>and                                    )<br>SHAUN O. HARRISON,         )<br>individually and in his official  )<br>capacity,                             )<br>    Defendants                 )<br>                                          ) | **COMPLAINT & JURY DEMAND** |

**Introduction**

This is a claim based on the constitutional deprivation of a student's right to bodily integrity and negligence by the Defendant, Boston Public Schools ("BPS"), whom negligently hired, retained, and supervised a teacher who shot Plaintiff, Luis Angel Rodriguez ("Mr. Rodriguez") in the back of the head and was charged for attempted murder. BPS hired, retained, promoted and failed to supervise its employee, Shaun O. Harrison with knowledge that he was a severe risk to commit physical violence towards students and violate the BPS Drug Free Policy. BPS covered up Shaun O. Harrison's criminal propensities by transferring him within the Boston Public School system and then promoting him to Dean of Academies at the English High School in Jamaica Plain in 2015. As Dean of Academies, Shaun O. Harrison solicited and endangered Mr. Rodriguez when he employed him to sell and distribute drugs to the student population at school. As a direct and foreseeable result of BPS's covering up Shaun O. Harrison's violent conduct towards students, reported endorsement of recreational drug use and negligence, BPS allowed Shaun O. Harrison to remain in a position of authority over students resulting in the Armed Assault with Intent to Murder Mr. Rodriguez, Aggravated Assault & Battery By Means

of A Dangerous Weapon of Mr. Rodriguez, and Possession Class D With Intent to Distribute, and multiple convictions for possession of firearms and ammunitions.

## Parties

1. Plaintiff Luis Angel Rodriguez brings this action on behalf of himself individually, and resides at 551 Worcester Road, Apt. 48, Middlesex County, Framingham, MA.

2. Defendant, Boston Public Schools is a school district serving the City of Boston, Massachusetts with a principal place of business located at 2300 Washington Street, Boston, Massachusetts 02119.

3. Defendant Shaun O. Harrison ("Harrison") is an individual who at all times material was employed by the Defendant Boston Public Schools. Harrison currently resides incarcerated at a maximum security state prison, Massachusetts Correctional Institution - Cedar Junction, located at 2405 Main Street, Walpole, Massachusetts 02071.

## Jurisdiction

4. Jurisdiction is proper because issues raise a federal question of law per 42 U.S.C. § 1983 and the damages exceed $75,000.00 per 28 U.S.C. § 1332.

## Venue

5. Venue is proper in this Court because the Plaintiff resides in this jurisdiction and because the nexus of events giving rise to this cause of action occurred within this venue.

## Facts

6. At all material times, the Defendant city operated a public school known at the English High School in Boston, Suffolk County, Massachusetts.

7. At all material times, Defendant BPS employed Defendant Harrison as Dean of Academies at the English High School and assigned him authority and responsibility for

overseeing the education, supervision, and discipline of The English High School students.

8. At all material times, The English High School was subject to the direction, control, and supervision of BPS which was authorized by law to adopt and implement, and which did adopt and implement policies, procedures, rules, and regulations to govern the safe and efficient operation of the City of Boston's public schools for the purpose of safely and properly educating the City's public student population.

9. At all material times, the City of Boston was authorized by law to employ, train, direct, supervise, and control, and did employ, train, direct, supervise and control administrators, educators, teachers and counselors to implement the policies, procedures, rules and regulations promulgated by BPS in order to ensure the safe and efficient operation of Boston's public schools for the purpose of safely and properly educating the City's public student population.

10. At all material times, Defendant Harrison and the teachers and administrators of the English High School and BPS were acting under the color of law, under the color of their authority as employees of BPS and within the scope of their employment with BPS.

11. Upon information and belief, BPS employed Harrison in a Community Field Coordinator position at the Boston Green Academy between August 27, 2011 and August 23, 2014.

12. Upon information and belief, on or about November 2012, a female student at Boston Green Academy reported Harrison for physically assaulting her and throwing an object at her.

13. Upon information and belief, BPS disciplined Harrison by issuing him a written warning after an investigation of the incident by the Headmaster at Boston Green Academy.

14. According to M.G.L. c. 119, §51A, BPS school administrators are required to immediately report to the Department of Children and Families reports of suspected instances of abuse of a child under the age of eighteen (18).

15. Upon information and belief, BPS failed to report the incident involving Harrison physically assaulting the female student to the Massachusetts Department of Children and Families ("DCF").

16. According to M.G.L. c. 119, §51A BPS staff members are required to report allegations to DCF, so that they may initiate an independent investigation. The purpose of M.G.L. c. 119, §51A is to ensure that experts trained in detecting abuse may access and speak with children, identify areas of concern, provide proper resources and begin legal proceedings if necessary.

17. Upon information and belief, the BPS issued Harrison another written warning during the same school year when the Headmaster found that Harrison made inappropriate statements to two (2) students that involved recreational drug use with the students.

18. Upon information and belief, after receiving this second disciplinary action in the same school year, Harrison appealed the second warning to the Board of Trustees.

19. Upon information and belief, The Board of Trustees upheld the disciplinary action issued against Harrison.

20. Upon information and belief, at the end of the school year 2013-2014, the Boston Green Academy exercised its hiring autonomies as an in-district charter school and dismissed Harrison for poor performance.

21. Upon information and belief, pursuant to Harrison's Boston Teachers Union contract BPS immediately placed Harrison in a paraprofessional position at another school within the BPS system, the Orchard Gardens Pilot School located in Roxbury, Massachusetts.

22. Harrison remained in this position from on or about August 2014 through January 5, 2014.

23. Upon information and belief, in the fall of 2014, BPS promoted Harrison to a managerial position, Dean of Academies, at the English High School located in Jamaica Plain, Boston, Massachusetts.

24. Upon information and belief, the Headmaster, Assistant Headmaster and two (2) Deans of the English High School selected Harrison out of a pool of fifty (50) applicants as the most suitable candidate.

25. Upon information and belief, Harrison began employment as the Dean of Academies on or about January 5, 2015.

26. Upon information and belief, Harrison's job description included the responsibility to provide leadership in generating and implementing interventions in order to support students, and to identify appropriate supports for students with academic, behavioral, social and emotional needs by making referrals both in-house and outside the English High School.

27. At all material times, BPS was subject to specifically following and implementing an Individualized Educational Plan for Mr. Rodriguez.

28. Upon information and belief, Harrison approached Mr. Rodriguez in the cafeteria, acting in his official capacity, and told Mr. Rodriguez he was there to be friends with and help Mr. Rodriguez.

29. Upon information and belief, on or about January 2015, Mr. Rodriguez's girlfriend was physically attacked at the English High School and as a result was transferred out of the English High School.

30. Upon information and belief, following her transfer, Mr. Rodriguez experienced distraction and upset during his classes, therefore he was referred by his teacher to meet one-on-one with Harrison for mentorship and counselling.

31. Upon information and belief, Mr. Rodriguez and Harrison met in Harrison's office at the English High School. Mr. Rodriguez disclosed to Harrison the situation regarding his girlfriend and how he felt about it during the school day.

32. Upon information and belief, Harrison responded to Mr. Rodriguez by confiding in Mr. Rodriguez about his own problems, then Harrison disclosed to Mr. Rodriguez that his son had been molested and he was facing difficult times too.

33. Upon information and belief, Harrison and Mr. Rodriguez met with each other again and this time walked to the school cafeteria together. Once they were alone in the cafeteria, Harrison told Mr. Rodriguez that he was "messed up off some weed and lean the other night." Mr. Rodriguez understood "lean" to be codeine.

34. At this same meeting Harrison asked Mr. Rodriguez if he wanted "to make money." Mr. Rodriguez did not respond initially to Harrison's question and was initially confused by Harrison.

35. Later that same school day, in the hallway Mr. Rodriguez sought and asked for clarification from Harrison about his "making money" comment earlier.

36. Harrison immediately escorted Mr. Rodriguez into his office where he told Mr. Rodriguez he would provide drugs to sell at school, and that's how they both could make money.

37. Harrison gave Mr. Rodriguez his phone number.

38. Harrison and Mr. Rodriguez met with Harrison to weigh and package Harrison's drugs and discuss the money arrangements.

39. It was agreed that when Mr. Rodriguez received money from a sale at school, he would immediately bring the money to Harrison. Under the guise of counselling and/or mentoring, Harrison would call Mr. Rodriguez to his office in order to conduct the drug sales at school.

40. Harrison hid the packaged drugs in his office at the English High School.

41. Upon information and belief, Harrison called Mr. Rodriguez on the phone and was very upset about two bags of drugs being unaccounted for. Mr. Rodriguez told Harrison he did not take the two bags.

42. Harrison demanded Mr. Rodriguez return all his drugs, and Mr. Rodriguez immediately complied delivering what remained in his possession back to Harrison.

43. Then, Mr. Rodriguez was attacked during the school day by another student.

44. Upon information and belief, Mr. Rodriguez believed this student also sold drugs at the English High School.

45. Police detectives escorted Mr. Rodriguez to the Principal's office after the fight, where Harrison, the Principal, and other student were present to discuss why the fight occurred.

46. Upon information and belief, the student who attacked Mr. Rodriguez switched his reasons for starting the fight with Mr. Rodriguez several times.

47. After the meeting, Mr. Rodriguez was in the school nurse's office and Harrison approached him and was talking to him.

48. During this conversation with Harrison, Mr. Rodriguez was approached by a female student, a friend, who was simply asking Mr. Rodriguez if he was okay.

49. Harrison yelled at the female student and engaged in an altercation with this female student and threatened her by saying "I will smack the shit out of you!"

50. This same day, Mr. Rodriguez received a text message from Harrison instructing Mr. Rodriguez to meet him at 7:00 p.m.

51. After meeting together at 7:00 p.m., Harrison told Mr. Rodriguez he was taking him to meet some girls, and to a party. Mr. Rodriguez agreed to go with Harrison.

52. As they were walking to what Mr. Rodriguez believed to be a party, Harrison shot Mr. Rodriguez at close range in the back of the head, leaving Mr. Rodriguez to bleed and then ran away.

53. Mr. Rodriguez got to his feet, held the open, bleeding wound on the back of his head and flagged down a vehicle passing by for help.

54. In accordance with the pre-requisites to filing suit in this Court, the Plaintiff served the Massachusetts Attorney General's Office and the Executive Officer of the Boston Public Schools with the required presentment letter on June 27, 2018.

55. Plaintiff has waited the amount of time prescribed by statute without resolution of his claim and have now filed suit in this Court.

**<u>Count I – Deprivation of Constitutional Rights under 42 U.S.C. § 1983</u>**
**(Interference with the Right to Bodily Integrity under the Fourteenth Amendment**
**(as to Defendant Shaun O. Harrison)**

56. Plaintiff restates all previous paragraphs within this document and incorporates them by reference as if stated fully herein.

57. At all times Defendant Harrison was in the presence of Mr. Rodriguez, acting within the scope of his authority and duties as a BPS employee and was a state actor in a position of trust and authority with minor children.

58. Harrison had the opportunity to exploit, endanger, abuse and assault Mr. Rodriguez through his position of trust and authority over Mr. Rodriguez, a high school student, which was granted to Harrison by the BPS, a government agency established under the laws of the City of Boston.

59. Harrison interfered with Mr. Rodriguez's Fourteenth Amendment to the United States Constitution's right to bodily integrity when, upon information and belief, he ordered the assault of Mr. Rodriguez at the English High School and then deliberately shot Mr. Rodriguez in the back of the head in his attempt to murder Mr. Rodriguez.

60. In committing these acts complained of herein, Defendant Harrison acted under the color of state law to deprive Mr. Rodriguez of certain constitutionally protected rights under the Fourteenth Amendment to the United States Constitution, including but not limited to the right to bodily integrity.

61. Defendants' gross negligence, amounting to deliberate indifference towards Harrison's propensity to physically assault students, to violate BPS Drug Free Policy deprived Mr. Rodriguez of his right to bodily integrity in violation of the Fourteenth Amendment to the United States Constitution which caused and continues to cause Mr. Rodriguez damages.

62. As a direct and proximate result of the violation of his constitutional rights by the Defendants, Plaintiff suffered general and special damages as alleged in this Complaint and are entitled to relief under 42 U.S.C. §1983.

63. The conduct of the Defendantswas willful, malicious, oppressive and/or reckless and was of such a nature that punitive damages should be imposed in amount commensurate with the wrongful acts alleged herein.

### Count II – Violations of the Commonwealth of Massachusetts' Declaration of Rights
### (As to all Defendants)

64. Plaintiff restates all previous paragraphs within this document and incorporates them by reference as if stated fully herein.

65. The Defendants deprived the minor Plaintiff, Mr. Rodriguez of his right to enjoy in safety and tranquility his natural rights and blessings of life and liberty; of his right of enjoying and defending his life and liberty; of his right of seeking and obtaining safety and happiness; of his right to find remedy by having recourse to the laws for all injuries and wrongs which he has received to his person, property, or character; and of his right not to be put out of the protection of the law or deprived of liberty or estates but by the judgment of his peers and the law of the land, all in violation of the Preamble and of Articles I, X, XI, XII, and CVI of the Declaration of Rights of the Commonwealth of Massachusetts.

66. As a direct and proximate result of the Defendant's deprivation of Mr. Rodriguez's civil rights under the Declaration of Rights of the Commonwealth of Massachusetts, Mr. Rodriguez has suffered damages.

67. Plaintiff, Mr. Rodriguez has a cause of action directly under the provisions of the Declaration of Rights of the Commonwealth of Massachusetts for the constitutional deprivations inflicted upon him by Defendants.

## Count III – Negligence
### (As to all Defendants)

68. Plaintiff restates all previous paragraphs within this document and incorporate them by reference as if stated fully herein.

69. Defendants had a duty to report all potential instances of assault of a minor to the Department of Children and Families. Defendants are mandated by this law, and BPS has a policy requiring Defendants to report all suspected violence and or assault of a minor. This law and BPS policies allow Defendants no discretion whatsoever to decide whether or not to report any instance of assault of a minor.

70. The Defendants breached their duty. Defendants violated M.G.L. c. 119 §51A and BPS's policies and procedures when they failed to report a physical assault of a student by Defendant Harrison. Disclosure of allegations of assault pursuant to M.G.L. c. 119 §51A is not a discretionary function as contemplated by M.G.L. c. 258.

71. As a direct and proximate result of the negligent failure of BPS to report an allegation of assault by Defendant Harrison, Plaintiff suffered severe, traumatic and aggravated assault and battery resulting in severe emotional distress, psychiatric injury, facial scarring, facial paralysis, hearing loss, and other injuries Plaintiff continues to suffer to this day.

## Count IV – Negligent Retention
### (As to all Defendant BPS)

72. Plaintiff restates all previous paragraphs within this document and incorporate them by reference as if stated fully herein.

73. The Defendant, BPS had a duty owed to their student body to exercise reasonable and due diligence when retaining employees to work with BPS. By way of example and not limitation, the Defendant had a duty to follow all applicable laws, codes of regulations, internal policies, and procedures in connection with retaining Defendant Harrison.

74. The Defendant, through its agents, employees, and/or servants did breach that duty. By way of example and not limitation, the Defendant violated M.G.L. c. 119 §51A, and its own policies and procedures in retaining Defendant Harrison. Disclosure of allegations of physical assault pursuant to M.G.L. c. 119 §51A is not a discretionary function as contemplated by M.G.L. c. 258.

75. As a direct and proximate result of negligently allowing an individual accused of physically assaulting a student to be promoted to a position of authority and trust with children, Mr. Rodriguez suffered severe, traumatic and aggravated assault and battery resulting in severe emotional distress, psychiatric injury, facial scarring, facial paralysis, hearing loss, and other injuries Plaintiff continues to suffer to this day.

### Count V – Negligent Transfer
### (As to all Defendant BPS)

76. Plaintiff restates all previous paragraphs within this document and incorporate them by reference as if stated fully herein.

77. Defendant, BPS owed a duty to their students to exercise reasonable and due diligence when transferring employees to work within the BPS school system. By way of example and not limitation, Defendants had a duty to follow all the applicable laws, codes of regulations, internal policies, and procedures in connection with the transfer and promotion of Defendant Harrison.

78. The Defendant, through its agents, employees, and/or servants did breach that duty. By way of example and not limitation, the Defendant violated M.G.L. c. 119 §51A, and its own policies and procedures in retaining Defendant Harrison. Disclosure of allegations of assault pursuant to M.G.L. c. 119 §51A is not a discretionary function as contemplated by M.G.L. c. 258.

79. As a direct and proximate result, Mr. Rodriguez suffered severe, traumatic and aggravated assault and battery resulting in severe emotional distress, psychiatric injury, facial scarring, facial paralysis, hearing loss, and other injuries Plaintiff continues to suffer to this day.

### Count VI– Intentional Infliction of Emotional Distress
**(As to all Defendants)**

80. Plaintiff restates all previous paragraphs within this document and incorporate them by reference as if stated fully herein.

81. The conduct of the Defendants set forth above constitutes extreme and outrageous conduct beyond all bounds of decency which is utterly intolerable in a civilized society.

82. As a direct and proximate result of Defendants tortuous conduct the Plaintiff suffered damages.

## Count VII – Negligent Infliction of Emotional Distress
**(As to all Defendants)**

83. Plaintiff restates all previous paragraphs within this document and incorporate them by reference as if stated fully herein.

84. Plaintiff suffered emotional distress accompanied and manifested by physical symptoms as aforesaid.

85. As a direct and proximate result of Defendants tortuous conduct Plaintiff suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Honorable Court:

a. Enter Judgment on his behalf on all counts;

b. Award compensatory damages, attorney fees, interest, and costs;

c. Award punitive damages;

d. Award damages for emotional distress;

e. Grant injunctive relief declaring the Defendant shall comply with all disclosure requirements regarding the physical assaults of students;

f. Award any other relief that this Court deems just and proper.

PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.

> Respectfully submitted,
> LUIS ANGEL RODRIGUEZ
> By his counsel,
>
> /s/ *Simon B. Mann*
> _____
> Simon B. Mann (BBO# 665301)
> Lisa A. McNaughton (BBO# 699545)
> Mann Law Firm, P.C.
> 200 Highland Avenue, Suite 300
> Needham, MA 02494
> Tel. (617)690-7379
> Fax (781)444-1014
> simon@sbmannlaw.com
> lisa@sbmannlaw.com