**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

**CIVIL ACTION No. 19-cv-10116-LTS**

| |
|---|
| LUIS ANGEL RODRIGUEZ, <br><br>                         **Plaintiff,** <br> v. <br><br> BOSTON PUBLIC SCHOOLS and <br> SHAUN O. HARRISON, individually and <br> in his official capacity, <br><br>                         **Defendants.** |

**DEFENDANT CITY OF BOSTON'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS THE COMPLAINT**

Defendant City of Boston (the "City") [1] submits this memorandum of law in support of its motion to dismiss all counts of the Complaint of plaintiff Luis Angel Rodriquez ("Plaintiff") asserted against it. [2]

**Preliminary Statement**

Plaintiff's claims arise from a shooting incident during which co-defendant Shaun Harrison shot Plaintiff due to a dispute involving a drug enterprise in which Harrison and Plaintiff were both involved. While Harrison was the Dean of Academies at Boston English, where Plaintiff was a student at the time, the shooting occurred off of school grounds, after school hours and at a time when Plaintiff believed that Harrison was "taking him to meet some

---

[1] The Boston Public Schools are not a separate and distinct legal entity, but rather a department of the City of Boston. Moreover, claims asserted against Harrison "in an official capacity" are claims against the City. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

[2] Plaintiff asserts six state law claims against the City: (1) Count II for violations of the Commonwealth of Massachusetts Declaration of Rights; (2) Count III for negligence; (3) Count IV for negligent retention; (4) Count V for negligent transfer; (5) Count VI for intentional infliction of emotional distress; and (6) Count VII for negligent infliction of emotional distress. Count I, which alleges violations of 42 U.S.C. §1983, is pleaded only against co-defendant Harrison.

girls, and to a party." As the shooting was an intentional tort and did not occur in the scope of Harrison's employment, the City has no tort liability for shooting itself.

Evidently recognizing this fact (as well as the City's defense under M.G.L. c. 258, §10(j)), Plaintiff attempts to circumvent the City's statutory tort defenses by couching the claims as a failure to report prior acts of Harrison and negligent retention and transfer. The problem for plaintiff is that no matter how the tort claims are characterized, they were not presented to the City in a timely fashion. Plaintiff failed to meet the requirement of M.G.L. c. 258, §4 to present his claims to the City within two years after the cause of action arose. Unlike the limitations period of §4, Plaintiff's status as a minor did not toll the presentment period. Accepting the latest possible date the cause of action "arose" – the March 3, 2015 shooting – Plaintiff was still required to give the City adequate notice of the claim by March 3, 2017. Presentment was not made until June 27, 2018. Indeed, Plaintiff – who was seventeen (17) years old at the time of the shooting – failed to present within two years of his eighteenth birthday. This is an absolute bar to any tort claims against the City.

Furthermore, Plaintiff's re-casting of his tort claims does not give him a reprieve from the §10 statutory defenses. Counts III and IV are based on failures to act and thus barred by §10(j). Count III for negligence is based on a failure to report a prior incident involving Harrison and Count IV for negligent retention is based on a failure to terminate Harrison after that prior incident. Count V, while nominally based on affirmative acts – the transfer and promotion of Harrison with knowledge of the prior incident – is also barred by §10(j) because it was the shooting that "originally caused" the harm to Plaintiff. Any connection between Harrison's transfer and promotion and his decision to shoot Plaintiff is too tenuous to support a tort claim against the City. Count VII must also be dismissed, as negligent infliction of emotional distress

claims are barred when they arise directly out of the circumstances for which the City has immunity. Finally, Count VI is, on its face, an intentional tort and thus barred by §10(c).

The only remaining claim is Count II for alleged violations of the Massachusetts Declaration of Rights. There is no such claim. Massachusetts courts do not recognize a private right of action under the Declaration of Rights. In the absence of a statute authorizing a private right of action, municipalities retain their sovereign immunity from suit. Even giving Plaintiff the benefit of the doubt and recasting his claims as statutory claims under 42 U.S.C. §1983 or the Massachusetts Civil Rights Act, M.G.L. c. 12, §§11H and 11I (the "MCRA"), the claims fail. Neither statute supports a claim against the City on a respondeat superior theory. Moreover, Plaintiff fails to state any facts that would support either a valid *Monell* claim under §1983 or a showing of the "threats, intimidation or coercion" by City employees making the employment decisions regarding Harrison that is required for an MCRA claim. All claims against the City fail as a matter of law and must be dismissed.

## Relevant Factual Allegations[3]

The City operates the English High School in Boston, Massachusetts ("Boston English").[4] At the time of the shooting, Harrison was the Dean of Academies at Boston English.[5] Prior to his time at Boston English, Harrison was employed as a Community Field Coordinator at the Boston Green Academy, and in-district charter school, from August 27, 2011 to August 12, 2014.[6] During his time at Boston Green Academy, Harrison is alleged to have physically assaulted a student and thrown an object at her, resulting in an investigation and a

---

[3] Except where otherwise noted all facts cited in this opposition are taken from Plaintiff's Complaint. The City makes no admission or denial with respect to these factual allegations, but rather simply contends that these facts fail to give rise to an actionable claim against it.
[4] Complaint at ¶6
[5] Complaint at ¶7
[6] Complaint at ¶¶11, 20

written warning.[7]  In the same school year, Harrison received another written warning for making inappropriate comments involving recreational drug use to two students.[8]  At the end of the 2013-14 school year, Boston Green Academy dismissed Harrison.[9]

Harrison then was briefly hired to work at the Orchard Gardens Pilot School, and was shortly thereafter promoted to Dean of Academies at Boston English.[10]  He began work on January 5, 2015.[11]  Plaintiff was a student at Boston English who was referred by a teacher to meet one-on-one with Harrison for mentorship and counselling because he was distracted and upset in class due to the transfer of his girlfriend in January 2015.[12]

Plaintiff met with Harrison in his office to discuss the situation with his girlfriend.[13]  Plaintiff again met with Harrison on a later occasion, and during this meeting, Harrison made a reference to "weed" and "lean" – which Plaintiff understood to be codeine – and asked Plaintiff if he wanted "to make money."[14]  After Plaintiff sought out Harrison to get clarification on his comment regarding making money, Harrison brought Plaintiff to his office and told him "he would provide drugs to sell at school, and that's how they both could make money."[15]  Plaintiff agreed and accepted Harrison's phone number.[16]

According to Plaintiff, he and Harrison then met to weigh and package the drugs "and discuss the money arrangements."[17]  They agreed to an arrangement pursuant to which Plaintiff

---

[7] Complaint at ¶¶12-13
[8] Complaint at ¶17
[9] Complaint at ¶17
[10] Compliant at ¶¶21-23
[11] Complaint at ¶25
[12] Complaint at ¶29-30
[13] Complaint at ¶21
[14] Complaint at ¶¶33-34
[15] Complaint at ¶¶35-36
[16] Complaint at ¶37
[17] Complaint at ¶38

would sell the drugs at school and immediately bring the money to Harrison under the guise of counselling or mentoring.[18] Harrison allegedly kept the drugs in his office at Boston English.[19]

Sometime following the finalizing of this arrangement to sell drugs, there was a dispute between the two over missing drugs.[20] According to Plaintiff, Harrison believed two bags of drugs given to Plaintiff were missing, and he demanded that Plaintiff return all of his drugs.[21] Later that day, Plaintiff was attacked by another student that allegedly sold drugs for Harrison.[22]

The shooting occurred on March 3, 2015.[23] Plaintiff was seventeen (17) years old at the time.[24] That day, Harrison sent Plaintiff a text message instructing him to meet at 7:00 p.m.[25] When they met at 7:00 p.m., Harrison told Plaintiff that he was taking him to meet some girls and to a party, and Plaintiff agreed to go.[26] While they were walking to what Plaintiff thought was a party, Harrison shot Plaintiff in the back of the head at close range.[27] Plaintiff flagged down a passing car and ultimately survived the shooting.[28]

Harrison was indicted on April 24, 2015 and convicted on May 31, 2018.[29] Presentment was not made until June 27, 2018.[30] The Complaint was filed on January 17, 2019.[31]

---

[18] Complaint at ¶39
[19] Complaint at ¶40
[20] Complaint at ¶¶41-42
[21] Complaint at ¶¶41-42
[22] Complaint at ¶¶43-44
[23] A true and correct copy of the indictment against co-defendant Harrison (on multiple counts) is attached hereto as **Exhibit A**. A copy of the presentment letter sent to the City, which contains an admission that the shooting occurred on March 3, 2015, is attached hereto as **Exhibit B**. In deciding this motion under Fed. R. Civ. P. 12(b)(6), this Court is not precluded from considering those documents for which authenticity is not challenged, that are central to the Plaintiff's claim, or that are sufficiently referred to in the Complaint so as to "merge[ ] [the documents] into the pleadings." *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33-34 (1st Cir. 2001) (citation omitted); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) . Exhibits A and B each fall into one or more of these categories.
[24] Exhibit B at p. 4
[25] Complaint at ¶50
[26] Complaint at ¶51
[27] Complaint at ¶52
[28] Complaint at ¶53; Exhibit B at p. 4
[29] Exhibit A; Exhibit B at p. 2
[30] Exhibit B; Complaint at ¶54
[31] Complaint [ECF No. 1]

**Argument**

I.     **RULE 12(b)(6) STANDARD**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombley*, 550 U.S. at 557).   Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions" and "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678-679.

Thus, in order to survive this motion to dismiss, the facts contained in the Plaintiffs' Complaint must have "nudged their claims across the line from conceivable to plausible." *Id*. at 680.  Plaintiffs' Complaint fails to accomplish this goal.  No set of facts can get around the fact that Plaintiff did not present his tort claims within the appropriate time period under M.G.L. c. 258, §4.  Likewise, the negligence claims pleaded by Plaintiff are barred by M.G.L. c. 258, §10(j) because they are based on a failure to act, and the intentional infliction of emotional distress claim is barred by M.G.L. c. 258, §10(c) because it is an intentional tort.  Finally, Count II fails because there is no private right of action under the Declaration of Rights, and the count does not state a claim against the City under §1983 or the MCRA as such claims cannot be based on a theory of respondeat superior.  For these reasons, and as set forth in more detail below, all of Plaintiff's claims against the City must be dismissed.

## II.  PLAINTIFF FAILED TO MAKE PRESENTMENT OF HIS TORT CLAIMS AGAINST THE CITY WITHIN TWO YEARS OF THE DATE THE CAUSES OF ACTION *AROSE* AS REQUIRED BY M.G.L. c. 258, §4

There is one crucial fact that bars any tort claims against the City regardless of how they are couched or what facts are pleaded to support them – Plaintiff did not make presentment until June 27, 2018.  The latest possible date that any tort cause of action against the City arose is the date of the shooting – March 3, 2015.[32]  Plaintiff's presentment of his tort claims more than ***three years later*** on June 27, 2018 was untimely.  All tort claims are barred as a matter of law.

Under M.G.L. c. 258, a plaintiff must give notice of a cause of action within ***two years*** of the date it arose.  "A civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose."  M.G.L. c. 258, §4.  Without proper and timely presentment, a plaintiff cannot initiate suit.  "This strict presentment requirement is a statutory prerequisite for recovery under the Act."  *Shapiro v. City of Worcester*, 464 Mass. 261, 267 (2013).  "Its purpose is to allow public employers the opportunity to investigate and settle claims and to prevent future claims through notice to executive officers."  *Id*. at 268.

Failure to make timely presentment is a bar to recovery and grounds for dismissal.  "In cases in which the issue is not raised until the time has elapsed during which presentment properly could have been made, the plaintiff's complaint is subject to dismissal on a motion made under Mass. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted."  *Vasys v. Metropolitan District Commission*, 387 Mass. 51, 56 (1982) (claim not barred because timely but improper presentment could have been cured had it been properly pleaded

---

[32] The City contends that the claims of negligence, negligent retention and negligent transfer arose earlier, certainly as early as when Plaintiff first entered into a criminal enterprise with Harrison to his detriment.  Complaint at ¶¶36-40.  For the purpose of this motion to dismiss, the City accepts the shooting as the date the claims "arose."

and answered). "Exceptions to the strict application of the presentment requirement have been made only in those unusual cases in which, by conduct in the course of litigation, a public employer, at a time when presentment could still have been made, lulled a plaintiff into believing that proper presentment would not be an issue in the case." *Krasnow v. Allen*, 29 Mass. App. Ct. 562, 567, n. 7 (1990) (citing *Vasys*). There are no facts to support an allegation that that this occurred here.

Unlike the three-year limitations period,[33] the two-year presentment period of M.G.L. c. 258, §4 is not tolled by the fact that Plaintiff was a minor at the time that his cause of action arose. In two cases decided on the same day, the Supreme Judicial Court held that, while the language of M.G.L. c. 260, §7 tolls the limitations period of M.G.L. c. 258, §4, it does not "by analogy" apply to the presentment requirement. *Compare George v. Town of Saugus*, 394 Mass. 40, 42-44 (1985) (no tolling of presentment requirement of §4) *with Hernandez v. City of Boston*, 394 Mass. 45, 48 (1985) (limitations period of §4 tolled for minors). In describing the holding of *Hernandez*, the *George* Court stated that the three-year statute of limitations provision of M.G.L. c. 258, § 4 is tolled by M.G.L. c. 260, § 7 "***if a minor plaintiff complies with the presentment requirement***, but fails to bring suit within three years of the date that the cause of action accrued." *George*, 394 Mass. at 42, n.3 (emphasis added). In other words, "[a]ll actions – be they by minors or adults – are subject to the two-year notice provision." *Hernandez v. City of Boston*, 394 Mass. 45, 48 (1985). Plaintiff failed to comply with this provision.[34]

---

[33] Plaintiff failed to plead facts sufficient to determine whether the claims are also barred by the three-year statute of limitations in M.G.L. c. 258, §4. According to the untimely presentment letter, Plaintiff was 17 at the time of the shooting on March 3, 2015. His claim was not filed until January 17, 2019. However, by operation of M.G.L. c. 260, §7, the limitations period for Plaintiff's claims was tolled until he reached 18. *See Hernandez v. City of Boston*, 394 Mass. 45, 48–49 (1985). The City has reason to believe that the claims were in fact filed within three years of Plaintiff's 18th birthday, but reserves its rights on this issue should this case survive dismissal.

[34] It is worth noting that while M.G.L. c. 260, §7 may have narrowly allowed Plaintiff to avoid the three-year statute of limitations, it would not have helped him avoid the two-year presentment requirement even if it were applicable, as presentment was not made in this case within two years of his 18th birthday.

While the discovery rule has been applied to presentment in certain circumstances, it does not apply here. *See*, *e.g.*, *Krasnow v. Allen*, 29 Mass. App. Ct. 562, 570 (1990) (claim not "inherently unknowable" where plaintiff knew of the harm and of the involvement of a public employee). Analyzing *George* in an analogous context, the Appeals Court has held that the Legislature's use of "arose" rather than "accrued" impacts the applicability of the discovery rule – it applies to the latter but not the former. *John Doe No. 4 v. Levine*, 77 Mass. App. Ct. 117, 119 (2010) (rejecting use of discovery rule to apply statute eliminating charitable immunity to claims that arose, but arguably did not accrue, prior to the statute's adoption). As the Appeals Court held in *Levine*:

> The time at which a cause of action arises is fixed: an event occurred that concurrently or at a later date caused an injury. The discovery of that injury marks the time at which the cause of action *accrues.*

*Id*. at 120 (emphasis in original); *see also Sisson v. Lhowe*, 460 Mass. 705, 709 (2011) (analysis of language distinction and *Levine* in context of statute of repose). Here, Plaintiff's tort claims arose (and accrued for that matter) by no later than March 3, 2015, when he knew of the harm and of the alleged involvement of Harrison and other school officials in causing that harm. There is no excuse for the failure to make timely presentment. Plaintiff's tort claims are thus barred as a matter of law because presentment was not made within two years after they arose.

### III. COUNTS III-VII ARE BARRED BECAUSE THEY FALL WITHIN TWO OF THE STATUTORY EXCLUSIONS TO TORT LIABILITY IN M.G.L. c. 258, §10

Even if Plaintiff had made timely presentment of his tort claims, they nonetheless fail on their merits. The tort claims against the City are carefully crafted to avoid several statutory defenses[35] that the City has to such claims based on the acts of its now-former employee Harrison. There is no question that, had Plaintiff pleaded tort claims against the City ***directly***

---

[35] Plaintiff specifically references the "discretionary function" defense – M.G.L. c. 258, §10(b) – in three of the counts. As discussed herein, this is not the only statutory defense to liability that applies to Plaintiff's claims.

based on the actions of Harrison, they would be barred. Harrison's actions were unquestionably outside the scope of his employment, rendering c. 258 inapplicable and the City immune from tort liability based on those actions. M.G.L. c. 258, § 2 ("while acting within the scope of his office or employment"); *see also Canty v. Old Rochester Regional School District*, 54 F. Supp. 2d 66, 71, n.6 (D. Mass. 1999) (Young, J.) (sexual abuse outside of the scope of employment of teacher). Likewise, Harrison's actions that caused injury to Plaintiff are intentional torts, and thus excluded from the scope of M.G.L. c. 258 by operation of §10(c). M.G.L. c. 258, §10(c) (intentional torts excluded); *Canty*, 54 F. Supp. 2d at 71 (citing *Mohr v. Commonwealth,* 421 Mass. 147, 164 (1995) and *Spring v. Geriatric Auth. of Holyoke,* 394 Mass. 274, 284–85 (1985))

As a result, rather than focus on the actions of Harrison, Plaintiff must point to the actions of other City employees as the source of the alleged negligence. Plaintiff's resulting tort theory is evidently that the City was negligent because it failed to report prior incidents involving Harrison to state authorities and subsequently retained and transferred/promoted him despite those prior incidents. As discussed in more detail below, this theory is too tenuous to escape the City's statutory defenses to c. 258 tort liability.

The Tort Claims Act is a legislative waiver of sovereign immunity by the Commonwealth and its political subdivisions. *See, e.g., Morrissey v. New England Deaconess Association-- Abundant Life Communities, Inc.*, 458 Mass. 580, 586-87 (2010). M.G.L. c. 258 was "a clear legislative intent to abolish the common-law doctrine of governmental immunity, and to replace it with a comprehensive statutory scheme that would govern the liability of public employers in tort actions." *Id*. at 590. "[T]he Legislature enacted [c. 258], thereby allowing plaintiffs with valid tort claims to recover damages against the Commonwealth and other public employers, ***subject to certain specified limitations.***" *Id*. at 587 (emphasis added).

"The Act is not a blanket waiver of protection." *Shapiro*, 464 Mass. at 270 (noting that §10 "specifically exempts certain categories of conduct that continue to enjoy the protection of sovereign immunity"). "Although the Act has abrogated the Commonwealth's immunity in tort actions in most circumstances, the Legislature has, for reasons of public policy, chosen to preserve sovereign immunity for certain claims, irrespective of their legal sufficiency or merit, or the gravity of the injuries alleged." *Morrisey,* 458 Mass. at 592 (internal quotation omitted) (discussing the statutory exemptions in §10(a-j)). Two of these statutory exemptions - §10(j) and §10(c) – bar Plaintiff's tort claims in this case.

### A. The Negligence Claims - Counts III-V and VII - Are Based On A Failure To Act And Are Thus Barred By §10(j)

The sum and substance of Plaintiff's negligence claims is that BPS officials failed to act to prevent the harm that he suffered at the hands of Harrison. The exclusion in §10(j) provides, in relevant part, that c. 258 liability:

> shall not apply to: … (j) any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer.

M.G.L. c. 258, §10(j). In other words, §10(j) "eliminates government liability for a public employer's act or failure to act to prevent harm from the wrongful conduct of a third party unless the condition or situation was 'originally caused' by the public employer." *Cormier v. City of Lynn*, 479 Mass. 35, 40 (2018) (emphasis in original). "To have 'originally caused' a condition or situation for the purposes of § 10(j), the public employer must have taken an affirmative action; a failure to act will not suffice." *Id*. at 40.

Count III is clearly a claim for negligence based on the failure of BPS employees to report a prior assault of a different student by Harrison. Plaintiff alleges that the City breached

its duty "when they failed to report a physical assault of a student by Defendant Harrison" that occurred when he was at a different school affiliated with BPS.[36] Plaintiff further alleges: "As a direct and proximate cause of the negligent failure of BPS to report an allegation of assault by Defendant Harrison, Plaintiff suffered" damages.[37] This Count is squarely in the scope of §10(j).

Count IV for negligent retention fares no better. In essence, Plaintiff seeks to hold the City liable for failing to fire Harrison after it learned of the prior physical assault incident. Plaintiff alleges that BPS owed a duty "when retaining employees," and that it breached that duty "in retaining Defendant Harrison." This Count also falls squarely in the scope of §10(j). "Negligent retention occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer ***fails to take further action*** such as investigating, discharge or reassignment." *Foster v. Loft, Inc.*, 26 Mass. App. Ct. 289, 291 (1988) (internal quotation omitted and emphasis added). Mere knowledge of a prior bad act and failure to terminate or take other action is insufficient to avoid §10(j). *See*, *e.g.*, *Canty*, 54 F. Supp. 2d at 68-71 (allegation that agents of school district knew of sexual harassment, abuse and rape of plaintiff and other students over a long period of time but did nothing barred by §10(j)).[38]

Count V presents a different issue, but is barred nonetheless by §10(j). There, Plaintiff alleges that employees of BPS took the affirmative acts of transferring and promoting Harrison. However, simply pleading any affirmative act is not sufficient to avoid §10(j). Rather, "for the

---

[36] Complaint at ¶70
[37] Complaint at ¶71
[38] *But see Doe v. Fournier*, 851 F. Supp. 2d 207, 225 (D. Mass. 2012) (Ponsor, J.) *and Lee v. Boston Public Schools*, 2016 WL 11372334, at *7 (D. Mass. Feb. 1, 2016) (Cabell, M.J.), *report and recommendation adopted*, 2016 WL 632198 (D. Mass. Feb. 17, 2016) (Sorokin, J.). In *Fournier* and *Lee*, the Court found that "[a]lthough retention is more passive than hiring and may not be sufficient to constitute an original cause under section 10(j)," that determination was premature at the dismissal stage. However, those cases involved claims that the school district was aware of prior acts of the precise nature of the harm alleged by the student – sexual misconduct or assault. Here, there are no alleged prior actions that would make it foreseeable that retaining Harrison would lead to him shooting one of the students off-campus and in off-hours in connection with a drug enterprise.

'original cause' language under § 10(j) to apply, 'the act must have materially contributed to creating the specific condition or situation that resulted in the harm.'" *Cormier*, 479 Mass. at 40 (2018) (quoting *Kent v. Commonwealth*, 437 Mass. 312, 319 (2002)). "The relationship between the act of the public employer's agent and the resulting injury cannot be attenuated." *Parker v. Chief Justice For Admin. & Mgmt. of Trial Court*, 67 Mass. App. Ct. 174, 178 (2006). "Conditions that are, in effect, failures to prevent harm, would undermine the principle purpose of § 10(j)." *Cormier*, 479 Mass. at 42 (having students line up in a particular order, while an affirmative act, "is, at bottom, another claim for negligence based on an act that fails to prevent or diminish harm") (internal quotation omitted). "Thus, for harm to be actionable, it must, as in any consideration of causation in a tort case, have been a foreseeable result of the negligence." *Parker*, 67 Mass. App. Ct. at 179 (dismissal under 10(j) for lack of foreseeability).

In *Parker*, probation officers issued a warrant for a white male, and along with a police officer, attempted to serve the warrant without obtaining any identifying information for the subject person. *Id*. at 176. They proceeded to the wrong apartment and attempted to arrest a black male with the same name (different middle initial) that was 25 years older than the subject individual. *See id*. After the individual told them he was the wrong man, the probation officers allegedly refused to check the warrant, and the police officer was alleged to have thrown the individual into a wall, punched him and told him to "shut up." *See id*. at 177. After two more officers arrived, one allegedly used a racial slur, sprayed him with mace and hit him with the mace can. *See id*. The three police officers were alleged to have continued to batter the plaintiff as the probation officers stood by. *See id*. Despite their presence at the scene and their alleged negligence in issuing the warrant, the Appeals Court held that "the negligence of the probation

13

officers, as a matter of law, cannot be said to be an affirmative act that created a situation resulting in harm" under §10(j). *Id*. As the Appeals Court elaborated:

> In the present case, the harm was precipitated directly by the behavior of the police officers. The probation officers neither caused, encouraged, participated in, nor facilitated the assault and battery. We reject the notion that it reasonably was foreseeable that their error would lead to tortious, perhaps criminal, acts on the part of police officers sworn to uphold the law. The absence of foreseeability would appear to doom the case under traditional causation concepts. It plainly bars the plaintiff's action given the limitations of § 10(*j*).

*Id*. (internal citations omitted). Likewise, in *Kent*, the Supreme Judicial Court concluded that §10(j) required dismissal of a claim against the parole board for its negligence in releasing a convicted murderer who – eight years later – shot a police officer because the parole board's affirmative act did not materially contribute to the police officer's injuries. *Id*. at 313, 319–320.

The present case is similar to *Parker* and *Kent*. While there may have been some cognizable affirmative act underlying Count V – the transfer and promotion of Harrison after he physically assaulted a student – those acts cannot be said to be the original cause of the harm to Plaintiff. The shooting was not a reasonably foreseeable consequence of those affirmative acts. *See*, *e.g.*, *Foster*, 26 Mass. App. Ct. at 295, n.3.[39] The original cause of the harm to Plaintiff was the shooting itself, which was an intentional tort far outside the scope of Harrison's employment, and thus outside of the scope of liability under c. 258. Like *Parker* and *Kent*, the relationship between the transfer and promotion of Harrison and Harrison's decision to shoot Plaintiff is far too attenuated. Count V should also be dismissed.

---

[39] On the issue of foreseeability based on prior bad acts, the Appeals Court stated in footnote 3: "Obviously, the nature of the employee's criminal record is important. An employee's past conviction of larceny by check would not make the employer liable, on the basis of the doctrine of negligent hiring or negligent retention, for the employee's subsequent rape of a customer." *Foster*, 26 Mass. App. Ct. at 295, n.3. Here, the fact that Harrison was alleged to have an assault incident in the past does not make it foreseeable that he would shoot one of his students in connection with their drug enterprise, after school hours and off of school grounds.

Count VII for negligent infliction of emotional distress is barred for the same reasons. Where a claim of negligent infliction of emotional distress "arises so directly out of the circumstances for which the Commonwealth has immunity" that claim is barred as well. *Jacome v. Commonwealth*, 56 Mass. App. Ct. 486, 493 (2002); *see also Stahr v. Lincoln Sudbury Regional High School District*, 93 Mass. App. Ct. 243, 250 (2018); *Jones v. Maloney*, 74 Mass. App. Ct. 745, 749 (2009). All of Plaintiff's negligence claims must be dismissed under §10(j).

### B. Count VI Is A "Claim Arising Out Of An Intentional Tort" Under §10(c)

In Counts III-V and VII, Plaintiff attempts to avoid the intentional tort exception to liability under §10(c) by pleading a "claim independent of the intentional tort" of Harrison against unnamed school officials. *Doe v. Town of Blandford*, 402 Mass. 831, 837 (1988) (negligence of supervisors of guidance counselor was "the true focus of the case," and not the intentional tort committed by guidance counselor). Count VI, on the other hand, is an allegation that those unnamed school officials themselves committed an intentional tort – intentional infliction of emotional distress. As a result, the claim is barred by §10(c).

The exclusion in §10(j) provides, in relevant part, that c. 258 liability:

shall not apply to: … (c) any claim arising out of an intentional tort, including assault, battery, false imprisonment, false arrest, intentional mental distress, malicious prosecution, malicious abuse of process, libel, slander, misrepresentation, deceit, invasion of privacy, interference with advantageous relations or interference with contractual relations.

M.G.L. c. 258, §10. "While § 10(c) lists a number of intentional torts, its use of the word "including" indicates that the enumerated list is representative, not all-inclusive, and that any intentional tort is covered by § 10(*c* )." *Barrows v. Wareham Fire District.*, 82 Mass. App. Ct. 623, 626 (2012)

"Pursuant to G. L. c. 258, § 10(c), a town is immune from liability for any claim 'arising out of an intentional tort including ... intentional mental distress.'" *McCarthy v. Town of Hamilton*, 2000 WL 282929, at *5 (Mass. Super. Ct., Jan. 7, 2000) (Botsford, J.) (quoting §10(c)). Even if Plaintiff establishes "that the school staff committed intentional infliction of emotional distress, [he] lose[s] because the defense of sovereign immunity has not been waived with respect to that tort by the Massachusetts Tort Claims Act." *Tilton v. Town of Franklin*, 24 Mass. App. Ct. 110, 112 (1987). Thus, a municipality such as the City "cannot be sued for intentional torts such as intentional infliction of emotion distress." *Saltzman v. Town of Hanson*, 935 F. Supp. 2d 328, 347 (D. Mass. 2013). Count VI for intentional infliction of emotional distress must be dismissed.

## IV. THERE IS NO CAUSE OF ACTION UNDER THE MASSACHUSETTS DECLARATION OF RIGHTS, AND ANY CLAIM UNDER §1983 OR M.G.L. c. 12, §§11H AND 11I FAILS AS A MATTER OF LAW

The only remaining count is Count II, which purports to assert a claim under the Massachusetts Declaration of Rights. Plaintiff invokes the Preamble and Articles I, X, XI, XII and CVI and claims that the City deprived Plaintiff of certain rights thereunder. However, there is no such cause of action. State constitutional claims must be brought pursuant to a statutory provision directly authorizing a private right of action. Plaintiff's resort to an awkwardly pleaded constitutional claim is an implicit acknowledgment that those statutes do not apply. Count II must be dismissed.

Massachusetts' refusal to recognize a private right of action under the Declaration of Rights "is soundly rooted in long-standing sovereign immunity law, which holds that the Commonwealth and its officers are generally immune from suits for damages for actions taken as State officers, unless the Legislature has acted expressly to abrogate that immunity." *Doe v. Sex*

*Offender Registry Bd.*, 94 Mass. App. Ct. 52, 64–65 (2018); *see also Sullivan v. Chief Justice for Admin. & Mgmt. of Trial Court*, 448 Mass. 15, 31 (2006) ("the Commonwealth cannot be sued unless there has been a waiver of its sovereign immunity"). "No case, however, has yet recognized a claim for money damages, brought directly under the State Constitution against State officers for actions taken as State officers." *Doe*, 94 Mass. App. Ct. at 64 (rejecting complaint that "purports to assert its State constitutional claims directly under the Massachusetts Declaration of Rights, without reference to any statutory cause of action"). As the Appeals Court has held, §1983 and its state analogue, the MCRA, "may be thought, as it were, to occupy the field." *Martino v. Hogan*, 37 Mass. App. Ct. 710, 720 (1994). Courts should not "abrogate sovereign immunity by fashioning a judicial remedy where the Legislature did not." *See Doe*, 94 Mass. App. Ct. at 65. As there is no private right of action under the Declaration of Rights, Count II fails to state a claim on which relief may be granted.

Nor can the claims be re-pleaded as statutory claims. Fashioned as a §1983 claim against the City, Plaintiff's claims would fail under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 692 (1978). A municipality is "not responsible for the unauthorized and unlawful acts of its officers." *Id*. The courts "have consistently refused to hold municipalities liable under a theory of respondeat superior." *Board of County Commissioners v. Brown,* 520 U.S. 397, 403 (1997). The Supreme Court, "concerned that municipal liability based on fault by the City might collapse into de facto respondeat superior, has set a very high bar for assessing municipal liability under *Monell*." *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 26 (1st Cir. 2005). Therefore, to plead municipal liability, the plaintiff must allege (1) an unconstitutional "policy or custom" of the City, ***and*** (2) that this policy or custom was "the

moving force" behind the alleged injury. *See Brown*, 520 U.S. at 403-05. There are simply no facts to support a *Monell* claim here.

Plaintiff's claim fares no better re-pleaded as a violation of the MCRA. "[C]laims against employers under the MCRA cannot rest on the doctrine of respondeat superior."[40] *Lyons v. National Car Rental Sys.*, 30 F.3d 240, 247 (1st Cir.1994) (relying on fact that the MCRA was enacted one year after *Monell* with no provision for respondeat superior); *see also French v. United Parcel Serv., Inc.*, 2 F. Supp. 2d 128, 133 (D. Mass. 1998) (O'Toole, J.) (plaintiff cannot "predicate an MCRA claim against an employer on a theory of respondeat superior."); *Armstrong v. Lamy*, 938 F. Supp. 1018, 1042 (D. Mass. 1996) (Keeton, J.) ("the doctrine of respondeat superior does not apply to an action brought under the MCRA"). Furthermore, to the extent the claims are based on the actions of other City employees in failing to terminate Harrison and transferring and promoting him, the claims are also barred because they fail to allege a deprivation of rights by "threats, intimidation or coercion." *See Doe*, 94 Mass. App. Ct. at 64; *French*, 2 F. Supp. 2d at 133; *Lamy*, 938 F. Supp. at 1042. Even had it been properly pleaded as a federal or state statutory claim, Count II must fail as a matter of law.

---

[40] *But see Sarvis v. Bos. Safe Deposit & Tr. Co.*, 47 Mass. App. Ct. 86, 97 (1999), which held that respondeat superior did apply under the MCRA to impose liability on ***private*** corporations. As *Monell* involved a municipality, courts have reasoned that "while the Massachusetts legislature may have viewed liability toward corporations in one light, it likely did not intend, by expanding liability to private actors, to impose the theory of respondeat superior on municipalities as well." *Chaabouni v. City of Boston*, 133 F. Supp. 2d 93, 103 (D. Mass. 2001) (Young, J.) (citing *Sarvis*). "[A] municipality is not a 'person' covered by the [MCRA]." *Howcroft v. City of Peabody*, 51 Mass. App. Ct. 573, 591 (2001)

## Conclusion

For the reasons set forth herein, the City respectfully requests that this Honorable Court grant its motion, dismiss all counts of the Complaint asserted against it and grant such other and further relief as it deems just and proper.

Dated:  April 17, 2019

Respectfully submitted,
**CITY OF BOSTON**

By its attorneys:

Eugene L. O'Flaherty
Corporation Counsel

/s/ Edward F. Whitesell, Jr.
Nicole M. O'Connor (BBO#675535)
Senior Assistant Corporation Counsel
Edward F. Whitesell, Jr. (BBO#644331)
Assistant Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201
(617) 635-4039 (NMO)
(617) 635-4045 (EFW)
Nicole.OConnor@boston.gov
Edward.Whitesell@boston.gov

## Certificate of Service

I, Edward F. Whitesell, Jr., hereby certify that a true copy of the above document will be served upon all parties of record via this court's electronic filing system and to those non-registered participants via first class mail.

/s/ Edward F. Whitesell, Jr.
Edward F. Whitesell, Jr.