UNITED STATES OF AMERICA

FEDERAL DISTRICT COURT OF MASSACHUSETTS

| | |
|---|---|
| LUIS ANGEL RODRIGUEZ,<br>    Plaintiff,<br><br>v.<br><br>BOSTON PUBLIC SCHOOLS,<br>and<br>SHAUN O. HARRISON,<br>individually and in his official<br>capacity,<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT & JURY DEMAND**

### Introduction

This is a claim based on the constitutional deprivation of a student's right to bodily integrity, a free and appropriate education, and negligence by the Defendant, Boston Public Schools ("BPS"), whom negligently hired, retained, and supervised a teacher, Shaun O. Harrison ("Harrison") who instead of providing guidance, mentorship, and/or wraparound services to the child, instead criminally solicited his assigned student, a child to sell drugs to the student population at the English High School located in Boston, Massachusetts. When Harrison believed Mr. Rodriguez would reveal his criminal operation, Harrison instigated another student, another child, to physically assault Mr. Rodriguez at school. Ultimately the same day, Harrison lured Mr. Rodriguez with promises of going to a party, only to create the opportunity to shoot Mr. Rodriguez execution style in the back of the head and flee the scene, letting Mr. Rodriguez to bleed to death. However, Mr. Rodriguez survived.

BPS hired, retained, promoted and failed to supervise its employee, Shaun O. Harrison with knowledge that he was a severe risk to commit physical violence towards students, and

violate the BPS Drug Free Policy. BPS covered up Shaun O. Harrison's inappropriate and dangerous conduct by issuing disproportionate discipline to the assault reported and by transferring him within the Boston Public School system and then further, promoting him to Dean of Academies at the English High School in Jamaica Plain in 2015. As a direct and foreseeable result of BPS determining Shaun O. Harrison's violent conduct towards students as "unsubstantiated" BPS final decision-makers allowed Shaun O. Harrison to remain in a position of authority over students, even assigned vulnerable students directly to him, like Mr. Rodriguez resulting in Harrison's conviction of Armed Assault with Intent to Murder Mr. Rodriguez, Aggravated Assault & Battery By Means of A Dangerous Weapon of Mr. Rodriguez, and Possession Class D With Intent to Distribute, and multiple convictions for possession of firearms and ammunitions. Final decision-makers and policy makers of the BPS owe a duty to the student population to hire and retain qualified and safe professionals, and to supervise their own chosen staff.

**Parties**

1. Plaintiff Luis Angel Rodriguez brings this action on behalf of himself individually, and resides at 551 Worcester Road, Apt. 48, Middlesex County, Framingham, MA.

2. Defendant, Boston Public Schools is a school district serving the City of Boston, Massachusetts with a principal place of business located at 2300 Washington Street, Boston, Massachusetts 02119.

3. Defendant Shaun O. Harrison ("Harrison") is an individual who at all times material was employed by the Defendant Boston Public Schools. Harrison is incarcerated at a maximum security state prison, Massachusetts Correctional Institution -Cedar Junction, located at 2405 Main Street, Walpole, Massachusetts 02071.

### Jurisdiction

4. Jurisdiction is proper because issues raise a federal question of law per 42 U.S.C. § 1983 and the damages exceed $75,000.00 per 28 U.S.C. § 1332.

### Venue

5. Venue is proper in this Court because the Plaintiff resides in this jurisdiction and because the nexus of events giving rise to this cause of action occurred within this venue.

### Facts

6. At all material times, the Defendant city operated a public school known at the English High School in Boston, Suffolk County, Massachusetts.

7. At all material times, Defendant BPS employed Defendant Harrison as Dean of Academies at the English High School and assigned him authority and responsibility for overseeing the education, supervision, and discipline of The English High School students.

8. At all material times, The English High School was subject to the direction, control, and supervision of BPS which was authorized by law to adopt and implement, and which did adopt and implement policies, procedures, rules, and regulations to govern the safe and efficient operation of the City of Boston's public schools for the purpose of safely and properly educating the City's public student population.

9. At all material times, the City of Boston was authorized by law to employ, train, direct, supervise, and control, and did employ, train, direct, supervise and control administrators, educators, teachers and counselors to implement the policies, procedures, rules and regulations promulgated by BPS in order to ensure the safe and efficient operation of

Boston's public schools for the purpose of safely and properly educating the City's public student population.

10. At all material times, Defendant Harrison and the teachers and administrators of the English High School and BPS were acting under the color of law, under the color of their authority as employees of BPS and within the scope of their employment with BPS.

11. Upon information and belief, BPS employed Harrison for contract work at Excel High School, located in the South Boston High School Complex in a part-time capacity, Harrison provided after-school support, leading peer mediation and anger management for approximately ten (10) students identified as needing such support.

12. Upon information and belief, the Children's Hospital Neighborhood Partnerships (CHNP) has partnered with Boston Public Schools to provide social workers and psychologists within under-served schools. In 2013, CHNP reached 11 schools and 1,930 students providing comprehensive mental health and wellness services. These include clinical interventions, supports for students displaying warning signs, and health promotion activities aligned with creating safe and supportive schools.

13. Upon information and belief, services such as behavior counseling are known as "wraparound services."

14. Upon information and belief, BPS employed Harrison in a Community Field Coordinator position at the Boston Green Academy between August 27, 2011 and August 23, 2014.

15. Upon information and belief, on or about November 2012, a female student at Boston Green Academy reported Harrison for physically assaulting her and throwing an object at her.

16. Upon information and belief, BPS disciplined Harrison by issuing him a written warning after an investigation of the incident by the Headmaster at Boston Green Academy.

17. According to M.G.L. c. 119, §51A, BPS school administrators are required to immediately report to the Department of Children and Families reports of suspected instances of abuse of a child under the age of eighteen (18).

18. Upon information and belief, BPS failed to report the incident involving Harrison physically assaulting the female student to the Massachusetts Department of Children and Families ("DCF").

19. According to M.G.L. c. 119, §51A BPS staff members are required to report allegations to DCF, so that they may initiate an independent investigation. The purpose of M.G.L. c. 119, §51A is to ensure that experts trained in detecting abuse may access and speak with children, identify areas of concern, provide proper resources and begin legal proceedings if necessary.

20. Upon information and belief, the BPS issued Harrison another written warning during the same school year when the Headmaster at the Boston Green Academy found that Harrison made inappropriate statements to two (2) students that involved Harrison endorsing recreational drug use with the students.

21. Upon information and belief, after receiving this second disciplinary action in the same school year, Harrison appealed the second warning to the Board of Trustees.

22. Upon information and belief, The Board of Trustees upheld the disciplinary action issued against Harrison.

23. Upon information and belief, at the end of the school year 2013-2014, the Boston Green Academy exercised its hiring autonomies as an in-district charter school and dismissed Harrison for poor performance.

24. On or about February 7, 2013, Mr. Rodriguez was referred by John Verre, Assistant Superintendent of BPS to Luis Duque, NCSP, School Psychologist for a psychological assessment to determine disability and eligibility for specially designed instruction.

25. Upon information and belief, following the psychological evaluation, BPS decision makers determined Mr. Rodriguez qualified for an individualized education program (hereinafter "IEP") based on a specific learning disability.

26. Upon information and belief, decision makers of the schools create a behavior plan to accompany an IEP for the eligible student.

27. Upon information and belief, pursuant to Harrison's Boston Teachers Union contract BPS immediately placed Harrison in a paraprofessional position at another school within the BPS system, the Orchard Gardens Pilot School located in Roxbury, Massachusetts.

28. Harrison remained in this position at Orchard Gardens from on or about August 2014 through January 5, 2014.

29. Upon information and belief, in the fall of 2014, BPS decision makers then promoted Harrison to a managerial position, Dean of Academies, at the English High School located in Jamaica Plain, Boston, Massachusetts.

30. Upon information and belief, the Headmaster, Assistant Headmaster and two (2) Deans of the English High School selected Harrison out of a pool of fifty (50) applicants as the most suitable candidate.

31. Upon information and belief, Harrison began employment as the Dean of Academies on or about January 5, 2015.

32. Upon information and belief, Harrison's job description included the responsibility to provide leadership in generating and implementing interventions in order to support students, and to identify appropriate supports for students with academic, behavioral, social and emotional needs by making referrals both in-house and outside the English High School.

33. At all material times, BPS was subject to and legally responsible for following and implementing an IEP for Mr. Rodriguez. Upon information and belief, IEPs remain effective and enforceable for the period of one (1) year, and then must be renewed.

34. On or about February 2014, during Mr. Rodriguez's freshman year, BPS granted an IEP for Mr. Rodriguez, listing Patricia Riordan as the Coordinator and contact person.

35. Upon information and belief, BPS obtained parental/guardian consent to implement the IEP from Mr. Rodriguez's guardian on May 1, 2014.

36. BPS failed to renew an IEP for Mr. Rodriguez before the end of February 2015.

37. At all material times, BPS assigned and directed Harrison to supervise and monitor Mr. Rodriguez at school. Mr. Rodriguez was instructed to work with Harrison for "everything" while at school.

38. Upon information and belief, Harrison as the Dean of Academies had unfettered access to Mr. Rodriguez's student record.

39. Upon information and belief, on or about 2013, Harrison advocated that the Bible should be taught in public schools within the Roxbury community and in the local press.

40. Upon information and belief, BPS allowed and endorsed Harrison to identify with the student population at English High School with his preferred nickname of "Rev" instead of "Mr. Harrison."

41. Upon information and belief, Harrison approached Mr. Rodriguez in the cafeteria, acting in his official capacity, under the color of state law, and told Mr. Rodriguez he was there to be friends with and help Mr. Rodriguez at school, as a BPS educator with authority.

42. Upon information and belief, on or about January 2015, Mr. Rodriguez's girlfriend was physically attacked at the English High School and as a result was transferred out of the English High School.

43. Upon information and belief, following her transfer, Mr. Rodriguez experienced distraction and upset during his classes, therefore he was referred by his teacher to meet one-on-one with Harrison for mentorship and counselling.

44. At all relevant and material times, BPS assigned, promoted and encouraged the relationship between Harrison and Mr. Rodriguez, as Mr. Rodriguez had been identified as a disabled and vulnerable student in need of services.

45. Upon information and belief, Mr. Rodriguez and Harrison met alone in Harrison's private office at the English High School. Mr. Rodriguez disclosed to Harrison the situation regarding his girlfriend and how he felt about it during the school day.

46. Upon information and belief, Harrison responded to Mr. Rodriguez by inappropriately confiding in Mr. Rodriguez about his own problems, when Harrison disclosed to Mr. Rodriguez that his son had been molested and he was facing difficult times too.

47. Upon information and belief, Harrison and Mr. Rodriguez met with each other again and this time walked to the school cafeteria together. Once they were alone in the cafeteria,

Harrison told Mr. Rodriguez that he was "messed up off some weed and lean the other night." Mr. Rodriguez understood "lean" to be codeine.

48. At this same meeting Harrison asked Mr. Rodriguez if he wanted "to make money." Mr. Rodriguez did not respond initially to Harrison's question and was initially shocked and confused by Harrison's criminal proposal.

49. Later that same school day, in the hallway Mr. Rodriguez sought and asked for clarification from Harrison about his "making money" proposal made earlier.

50. Harrison immediately escorted Mr. Rodriguez into his office, in the school, where he told Mr. Rodriguez he would supply drugs for Mr. Rodriguez to sell at school, and that's how they both could make money off the student population at the English High School.

51. Harrison gave Mr. Rodriguez his personal phone number.

52. Harrison and Mr. Rodriguez frequently contacted each other via text message during the school day hours.

53. Mr. Rodriguez frequently was disciplined for being on his cell phone during classes.

54. Harrison and Mr. Rodriguez met with Harrison to weigh and package Harrison's drugs and discuss the money arrangements.

55. It was agreed that when Mr. Rodriguez received money from a drug sale at school, he would immediately bring the money to Harrison, then Harrison would provide Mr. Rodriguez with his portion of the profits. Harrison offered Mr. Rodriguez marijuana and various other illegal and dangerous drugs as payment for selling drugs on behalf of Harrison at school to the student population.

56. Upon information and belief, Harrison hid the packaged drugs in his office at the English High School.

57. Upon information and belief, Harrison called Mr. Rodriguez on the phone and was very upset about two bags of drugs being unaccounted for. Mr. Rodriguez told Harrison he did not take the two bags.

58. Harrison demanded Mr. Rodriguez return all his drugs, and Mr. Rodriguez immediately complied, assuring Harrison what remained in his possession he would return to Harrison.

59. Then, Mr. Rodriguez was attacked during the school day by another student.

60. Upon information and belief, Mr. Rodriguez believed this student also sold drugs at the English High School.

61. Police detectives escorted Mr. Rodriguez to the Principal's office after the fight, where Harrison, the Principal, and the other student were present to discuss why the fight occurred.

62. Upon information and belief, the student who attacked Mr. Rodriguez switched his reasons for starting the fight with Mr. Rodriguez several times. Mr. Rodriguez believed this assault to be connected to Harrison's demand to return his drugs made earlier.

63. After the meeting with the Principal, Mr. Rodriguez was in the school nurse's office and Harrison approached him, urging Mr. Rodriguez to keep quiet about their illegal drug dealing.

64. During this conversation with Harrison, Mr. Rodriguez was approached by a female student, a friend, who was simply passing by the nurse's office asking Mr. Rodriguez if he was okay.

65. Harrison aggressively yelled at the female student and engaged in an altercation with this female student, turning physically towards her and threatened her by saying "I will smack the shit out of you!"

66. This same day, Mr. Rodriguez received a text message from Harrison instructing Mr. Rodriguez to meet him at 7:00 p.m.

67. After meeting together at 7:00 p.m., Harrison told Mr. Rodriguez he was taking him to meet some girls, and to a party. Mr. Rodriguez agreed to go with Harrison.

68. As they were walking to what Mr. Rodriguez believed to be a party, Harrison shot Mr. Rodriguez at close range in the back of the head, leaving Mr. Rodriguez to bleed to death, and then ran away.

69. Mr. Rodriguez got to his feet, held the open, bleeding wound on the back of his head and flagged down a vehicle passing by for help.

70. Final decision makers terminated Harrison's employment on March 5, 2015.

71. In accordance with the pre-requisites to filing suit in this Court, the Plaintiff served the Massachusetts Attorney General's Office and the Executive Officer of the Boston Public Schools with the required presentment letter on June 27, 2018.

72. Plaintiff has waited the amount of time prescribed by statute without resolution of his claim and have now filed suit in this Court.

**Count I – Deprivation of Constitutional Rights under 42 U.S.C. § 1983**
**(Interference with the Right to Bodily Integrity under the Fourteenth Amendment**
**(As to All Defendants)**

73. Plaintiff restates all previous paragraphs within this document and incorporates them by reference as if stated fully herein.

74. At all times Defendant Harrison was in the presence of Mr. Rodriguez, acting within the scope of his authority and duties as a BPS employee and was a state actor in a position of trust and authority with minor children.

75. Harrison had the opportunity to solicit, endanger, abuse and assault Mr. Rodriguez through his position of trust and authority over Mr. Rodriguez, a high school student, which was granted to Harrison by the BPS, a government agency established under the laws of the City of Boston.

76. Harrison interfered with Mr. Rodriguez's Fourteenth Amendment to the United States Constitution's right to bodily integrity when, upon information and belief, he solicited Mr. Rodriguez to sell drugs in school to the English High School's student population, he ordered the assault of Mr. Rodriguez at the English High School by another student, and then deliberately shot Mr. Rodriguez in the back of the head in his attempt to murder Mr. Rodriguez.

77. In committing these acts complained of herein, Defendant Harrison acted under the color of state law to deprive Mr. Rodriguez of certain constitutionally protected rights under the Fourteenth Amendment to the United States Constitution, including but not limited to the right to bodily integrity.

78. Defendants' gross negligence, amounting to deliberate indifference towards Harrison's propensity to physically assault students and to violate BPS Drug Free Policy deprived Mr. Rodriguez of his right to bodily integrity in violation of the Fourteenth Amendment to the United States Constitution which caused and continues to cause Mr. Rodriguez damages.

79. As a direct and proximate result of the violation of his constitutional rights by the Defendants, Plaintiff suffered general and special damages as alleged in this Complaint and are entitled to relief under 42 U.S.C. §1983.

80. The conduct of the Defendants was willful, malicious, oppressive and/or reckless and was of such a nature that punitive damages should be imposed in amount commensurate with the wrongful acts alleged herein.

## Count II – Violations of Title IX

### (As to all Defendants)

81. The Plaintiff restates all previous paragraphs within this document and incorporates them by reference as if fully stated herein.

82. The Defendant, BPS received federal funding through a variety of education programs.

83. The Defendants are subject to the requirements of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681-1686, and the regulations and rules promulgated thereunder.

84. The Defendants failed to take appropriate measures to protect the minor Plaintiff from being solicited to engage in illegal drug trafficking and physical assault by the Defendant's employee, Shaun O. Harrison, in violation of Title IX of the Education Amendments of 1972, and in violation of rights guaranteed by the United States and Massachusetts constitutions, laws, regulations, and rules.

85. Through their aforesaid conduct, deliberate indifference, and negligence, the Defendants created and permitted the existence of a severely dangerous and hostile educational environment for the minor Plaintiff, in violation of Title IX of the Education Amendments of 1972.

86. The Defendants violated the rights secured to the minor Plaintiff pursuant to Title IX of the Education Amendments, 20 U.S.C. §§1681-1686, and the regulations and rules promulgated thereunder, as aforesaid, for which the Defendants may be held liable to the Plaintiff.

87. The minor Plaintiff was a victim of child abuse, solicitation to sell drugs at school, and aggravated physical assault and attempted murder.

88. As a direct and proximate result of Harrison's abuse and solicitation, and BPS's deliberate indifference, Plaintiff was deprived of equal protection of the laws on the basis of his disability.

89. As a direct and proximate result of Harrison's abuse and solicitation, and BPS's deliberate indifference, Plaintiff was effectively denied equal access to educational resources, benefits, and opportunities.

90. As a direct and proximate result of Harrison's abuse and solicitation, and BPS's deliberate indifference, Plaintiff was effectively denied a free and appropriate public education.

### Count III – Violations of the Commonwealth of Massachusetts' Declaration of Rights
**(As to all Defendants)**

91. Plaintiff restates all previous paragraphs within this document and incorporates them by reference as if stated fully herein.

92. The Defendants deprived the minor Plaintiff, Mr. Rodriguez of his right to enjoy in safety and tranquility his natural rights and blessings of life and liberty; of his right of enjoying and defending his life and liberty; of his right of seeking and obtaining safety and happiness; of his right to find remedy by having recourse to the laws for all injuries and

wrongs which he has received to his person, property, or character; and of his right not to be put out of the protection of the law or deprived of liberty or estates but by the judgment of his peers and the law of the land, all in violation of the Preamble and of Articles I, X, XI, XII, and CVI of the Declaration of Rights of the Commonwealth of Massachusetts.

93. As a direct and proximate result of the Defendant's deprivation of Mr. Rodriguez's civil rights under the Declaration of Rights of the Commonwealth of Massachusetts, Mr. Rodriguez has suffered damages.

94. Plaintiff, Mr. Rodriguez has a cause of action directly under the provisions of the Declaration of Rights of the Commonwealth of Massachusetts for the constitutional deprivations inflicted upon him by Defendants.

### Count IV – Negligence
### (As to all Defendants)

95. Plaintiff restates all previous paragraphs within this document and incorporate them by reference as if stated fully herein.

96. Defendants had a duty to report all potential instances of assault of a minor to the Department of Children and Families. Defendants are mandated by this law, and BPS has a policy requiring Defendants to report all suspected violence and or assault of a minor. This law and BPS policies allow Defendants no discretion whatsoever to decide whether or not to report any instance of assault of a child.

97. The Defendants had a duty to supervise their own staff.

98. The Defendants breached their duty. Defendants deliberately violated M.G.L. c. 119 §51A and BPS's policies and procedures when they failed to report a physical assault of a

female student by Defendant Harrison. Disclosure of allegations of assault pursuant to M.G.L. c. 119 §51A is not a discretionary function as contemplated by M.G.L. c. 258.

99. As a direct and proximate result of the negligent failure of BPS to report an allegation of assault by Defendant Harrison, Plaintiff suffered severe, traumatic and aggravated assault and battery resulting in severe emotional distress, psychiatric injury, facial scarring, facial paralysis, hearing loss, and other injuries Plaintiff continues to suffer to this day.

### Count V – Negligent Retention
### (As to Defendant BPS)

100. Plaintiff restates all previous paragraphs within this document and incorporate them by reference as if stated fully herein.

101. The Defendant, BPS had a duty owed to their student body to exercise reasonable and due diligence when retaining employees to work with BPS. By way of example and not limitation, the Defendant had a duty to follow all applicable laws, codes of regulations, internal policies, and procedures in connection with retaining, and then promoting Defendant Harrison.

102. The Defendant, through its agents, employees, and/or servants did breach that duty. By way of example and not limitation, the Defendant violated M.G.L. c. 119 §51A, and its own policies and procedures in retaining Defendant Harrison. Disclosure of allegations of physical assault pursuant to M.G.L. c. 119 §51A is not a discretionary function as contemplated by M.G.L. c. 258.

103. As a direct and proximate result of negligently allowing an individual accused of physically assaulting a student to be promoted to a position of authority and trust with children, Mr. Rodriguez suffered severe, traumatic and aggravated assault and battery

resulting in severe emotional distress, psychiatric injury, facial scarring, facial paralysis, hearing loss, and other injuries Plaintiff continues to suffer to this day.

### Count VI – Negligent Transfer
**(As to Defendant BPS)**

104. Plaintiff restates all previous paragraphs within this document and incorporate them by reference as if stated fully herein.

105. Defendant, BPS owed a duty to their students to exercise reasonable and due diligence when transferring employees to work within the BPS school system. By way of example and not limitation, Defendants had a duty to follow all the applicable laws, codes of regulations, internal policies, and procedures in connection with the transfer and promotion of Defendant Harrison.

106. The Defendant, through its agents, employees, and/or servants did breach that duty. By way of example and not limitation, the Defendant violated M.G.L. c. 119 §51A, and its own policies and procedures in retaining Defendant Harrison. Disclosure of allegations of assault pursuant to M.G.L. c. 119 §51A is not a discretionary function as contemplated by M.G.L. c. 258.

107. As a direct and proximate result, Mr. Rodriguez suffered severe, traumatic and aggravated assault and battery resulting in severe emotional distress, psychiatric injury, facial scarring, facial paralysis, hearing loss, and other injuries Plaintiff continues to suffer to this day.

### Count VII– Intentional Infliction of Emotional Distress
**(As to all Defendants)**

108. Plaintiff restates all previous paragraphs within this document and incorporate them by reference as if stated fully herein.

109. The conduct of the Defendants set forth above constitutes extreme and outrageous conduct beyond all bounds of decency which is utterly intolerable in a civilized society.

110. As a direct and proximate result of Defendants tortuous conduct the Plaintiff suffered damages.

### Count VIII – Negligent Infliction of Emotional Distress
### (As to all Defendants)

111. Plaintiff restates all previous paragraphs within this document and incorporate them by reference as if stated fully herein.

112. Plaintiff suffered emotional distress accompanied and manifested by permanent physical symptoms.

113. As a direct and proximate result of Defendants tortuous conduct Plaintiff suffered damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Honorable Court:

a. Enter Judgment on his behalf on all counts;

b. Award compensatory damages, attorney fees, interest, and costs;

c. Award punitive damages;

d. Award damages for emotional distress;

e. Grant injunctive relief declaring the Defendant shall comply with all disclosure requirements regarding the physical assaults of students;

f. Award any other relief that this Court deems just and proper.

PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.

Respectfully submitted,
LUIS ANGEL RODRIGUEZ
By his counsel,


/s/ *Simon B. Mann*

_____
Simon B. Mann (BBO# 665301)
Lisa A. McNaughton (BBO# 699545)
Mann Law Firm, P.C.
200 Highland Avenue, Suite 300
Needham, MA 02494
Tel. (617)690-7379
Fax (781)444-1014
lisa@sbmannlaw.com


**Certificate of Service**

I, Simon B. Mann, hereby certify that a true copy of this document will be served upon all parties of record via this court's electronic filing system and to those non-registered participants via first class mail.

/s/ *Simon B. Mann*

_____
Simon B. Mann