UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                                          | ) |                          |
|------------------------------------------|---|--------------------------|
| LUIS ANGEL RODRIGUEZ,                    | ) |                          |
|                                          | ) |                          |
|     Plaintiff,       | ) |                          |
|                                          | ) |                          |
| v.                                       | ) | Civil No. 19-10116-LTS   |
|                                          | ) |                          |
| BOSTON PUBLIC SCHOOLS and                | ) |                          |
| SHAUN O. HARRISON, individually and      | ) |                          |
| in his official capacity,                | ) |                          |
|                                          | ) |                          |
|     Defendants.      | ) |                          |

ORDER ON MOTION TO DISMISS (DOC. NO. 16)

July 29, 2019

SOROKIN, J.

Luis Angel Rodriguez is suing Boston Public Schools ("BPS") and Shaun Harrison, a former BPS employee, for harm he suffered when Harrison solicited him to sell drugs to other students at school and later shot him in the back of the head. BPS has moved to dismiss all claims against it, which include the claims asserted against Harrison in his "official capacity." Rodriguez opposed. For the reasons expressed herein, the motion to dismiss is ALLOWED IN PART and DENIED IN PART.

I.    FACTS[1]

BPS operates the English High School in Boston, Massachusetts. Doc. No. 14 ¶ 6. From January to March 2015, BPS employed Harrison as Dean of Academies at the English High

---

[1] The Court draws the facts from the amended complaint, Doc. No. 14; it "accept[s] all well-pleaded facts alleged in the Complaint as true and draw[s] all reasonable inferences in favor of the plaintiff." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). The Court recites only as much of the complaint's factual allegations as necessary.

School, where he was responsible for "overseeing the education, supervision, and discipline" of the students. Id. ¶ 7. In the five years prior to hiring Harrison to the Dean of Academies position, BPS employed Harrison for contract work at Excel High School, as a Community Field Coordinator at Boston Green Academy, and as a paraprofessional at Orchard Gardens Pilot School. Id. ¶¶ 11, 14, 27.

In November 2012, while Harrison was employed as a Community Field Coordinator at Boston Green Academy, a female student "reported Harrison for physically assaulting her and throwing an object at her." Id. ¶ 15. Thereafter, "BPS disciplined Harrison by issuing him a written warning after an investigation of the incident by the Headmaster at Boston Green Academy." Id. ¶ 16. "BPS issued Harrison another written warning during the same school year when the Headmaster at the Boston Green Academy found that Harrison made inappropriate statements to two [] students that involved Harrison endorsing recreational drug use with the students." Id. ¶ 20. Harrison appealed this second warning to the Board of Trustees, but it was upheld. Id. ¶¶ 21, 22. At the end of the 2013-14 school year, the Boston Green Academy "dismissed Harrison for poor performance."[2] Id. ¶ 23.

Pursuant to his contract, BPS "immediately placed Harrison in a paraprofessional position at another school within the BPS system, the Orchard Greens Pilot School" for the 2014-15 school year. Id. ¶ 27. Harrison remained in that position from August 2014 until January 2015, when he was promoted to Dean of Academies at the English High School. Id. ¶ 28. Harrison was hired by the Headmaster, Assistant Headmaster, and two Deans of the English High School. Id. ¶ 30.

---

[2] The amended complaint notes that the Boston Green Academy was able to terminate Harrison without permission from BPS as it is an "in-district charter school" with "hiring autonomies." Doc. No. 14 ¶ 23.

2

The plaintiff, Rodriguez, was a freshman at the English High School during the 2013-14 school year.[3] Id. ¶ 34. In his role as Dean of Academies, Harrison was responsible for "identify[ing] appropriate supports for students with academic, behavioral, and emotional needs," including students with individualized education plans ("IEPs"). Id. ¶ 32. This included Rodriguez, who was granted an IEP in February 2014. Id. ¶ 34. In fact, "BPS assigned and directed Harrison to supervise and monitor Mr. Rodriguez at school," and instructed Rodriguez "to work with Harrison for 'everything' while at school." Id. ¶ 37.

In January 2015, Rodriguez "experienced distraction and upset during his classes" following the physical attack of his girlfriend. Id. ¶¶ 42-43. He was consequently "referred by his teacher to meet one-on-one with Harrison for mentorship and counseling." Id. ¶ 42. Thereafter, Rodriguez met with Harrison alone a number of times. Id. ¶¶ 45, 47. In one of these meetings, "Harrison asked Mr. Rodriguez if he wanted 'to make money.'" Id. ¶ 48. When Rodriguez asked for clarification, Harrison "told Mr. Rodriguez he would supply drugs for Mr. Rodriguez to sell at school, and that's how they both could make money off the student population at the English High School." Id. ¶ 50. The two entered into an agreement wherein Harrison provided Rodriguez with drugs which Rodriguez sold to other students at the school, giving the money from the sales to Harrison and receiving drugs as payment. Id. ¶¶ 50-55.

At some point, Harrison accused Rodriguez of taking two bags of drugs, which Rodriguez denied. Id. ¶ 57. Harrison demanded that Rodriguez return all the drugs he had, and

---

[3] The Court notes that the amended complaint does not specifically allege that Rodriguez was a student at the English High School. However, the amended complaint does allege that Rodriguez was a freshman in February 2014 and that during the 2014-15 school year, Harrison was assigned to supervise and monitor Rodriguez at school. The Court draws the reasonable inference from these facts that Rodriguez was in fact a student at the English High School while Harrison worked there in January through March 2015.

3

Rodriguez agreed to do so.  Id. ¶ 58.  That same day, Rodriguez was attacked by another student, which Rodriguez believed "to be connected to Harrison's demand to return his drugs made earlier."  Id. ¶ 62.  After Rodriguez met with the principal and police about the fight, "Harrison approached him, urging Mr. Rodriguez to keep quiet about their illegal drug dealing."  Id. ¶ 63.  When a female student approached the two during this conversation, Harrison "threatened her by saying 'I will smack the shit out of you!'"  Id. ¶ 65.

Later the same day, Harrison texted Rodriguez to meet him at 7:00 that evening.[4]  Id. ¶ 66.  Rodriguez obliged, and when the two met, Harrison told Rodriguez "he was taking him to meet some girls, and to a party."  Id. ¶ 67.  As the two were walking, "Harrison shot Mr. Rodriguez at close range in the back of the head, leaving Mr. Rodriguez to bleed to death, and then ran away."  Id. ¶ 68.  Fortunately, Mr. Rodriguez did not die from his injuries.  Id. ¶ 69.  On May 31, 2018, Harrison was convicted of a number of crimes in state court arising from these events and is currently serving the resulting prison sentence.  Doc. No. 18-2.

On June 27, 2018, Rodriguez served the statutorily required presentment letter to the Massachusetts Attorney General's Office and the Executive Officer of BPS.  Doc. No. 14 ¶ 71.  On January 17, 2019, Rodriguez filed a complaint in this Court.  Doc. No. 1.  After an initial motion to dismiss, Rodriguez amended his complaint, adding additional claims.  Doc. No. 14.  The amended complaint asserts eight claims against BPS: (1) Count I for violations of 42 U.S.C. §1983; (2) Count II for violations of Title IX; (3) Count III for violations of the Commonwealth of Massachusetts Declaration of Rights; (4) Count IV for negligence; (5) Count V for negligent

---

[4] The amended complaint does not allege the specific date of these events.  However, the state court indictment of Harrison, submitted by Rodriguez in opposition to the motion to dismiss, alleges that the shooting happened on March 3, 2015.  Doc. No. 18-2 at 2.  Additionally, Rodriguez mentions March 3, 2015 in his opposition as the date of the shooting.  Doc. No. 18-1 at 12.

4

retention; (6) Count VI for negligent transfer; (7) Count VII for intentional infliction of emotional distress; and (8) Count VIII for negligent infliction of emotional distress.[5]  Id.  BPS moved to dismiss all claims in the amended complaint, as asserted against BPS or Harrison in his official capacity.  Doc. No. 16.  Rodriguez opposed.  Doc. No. 18.  The Court heard argument from the parties on July 19, 2019.

II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In evaluating a complaint, the court must accept all factual allegations in the complaint as true and construe all reasonable inferences in the plaintiff's favor.  Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions and "threadbare recitals of the elements of a cause of action."  Iqbal, 556 U.S. at 678.  A reviewing court must conduct a "context-specific" assessment of the pleadings by drawing on "its judicial experience and common sense." Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009) (quoting Iqbal, 556 U.S. at 663–64). A complaint must be dismissed for failure to state a claim when it lacks "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997).

---

[5] Counts I, II, III, IV, VII, and VIII are also asserted against Harrison in both his individual and official capacities.  BPS's motion to dismiss applies only to those claims asserted against Harrison in his official capacity.  Doc. No. 17 at 1 n.1.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.").  Harrison has not answered the complaint or moved to dismiss.  Accordingly, the Court does not consider any of the claims asserted against Harrison in his individual capacity.

III.   DISCUSSION

   A.   Presentment

BPS moves to dismiss the five tort claims against the City, Counts IV-VIII based on the fact that Rodriguez did not make presentment until June 27, 2018, which BPS argues is outside the two-year requirement under the Massachusetts Tort Claims Act ("MTCA"). Rodriguez argues that the two-year requirement under MTCA does not apply because his claims are based on an "inherently unknowable wrong."

A claim under the MTCA "shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose." Mass. Gen. Laws. ch. 258, § 4. "This strict presentment requirement is a statutory prerequisite for recovery under the Act." Shapiro v. City of Worcester, 982 N.E.2d 516, 522 (Mass. 2013). However, the so-called "discovery rule" is sometimes applied, making the date that the cause of action "arose" for presentment purposes the date upon which "the plaintiff learns or reasonably should have learned that he or she has been harmed by a defendant's conduct." Heck v. Com., 491 N.E.2d 613, 615 (Mass. 1986); see also Pettengill v. Curtis, 584 F. Supp. 2d 348, 363 (D. Mass. 2008) ("If the discovery rule tolls the statute of limitations, it also tolls the presentment requirement."). The "discovery rule" is generally applicable in cases in which the plaintiff's harm was "inherently unknowable" at the time of the defendant's alleged tortious conduct. Hendrickson v. Sears, 310 N.E.2d 131, 136 (Mass. 1974).

In this case, BPS argues that the latest date Rodriguez's injury could be considered to have arisen was March 3, 2015, the date Harrison shot him. Doc. No. 17 at 7. In response, Rodriguez argues that "the actions of BPS official were completely unknown to [him] at that

6

time," and that "[i]t was on or about the last week of May 2018 when Mr. Rodriguez first learned of a potential claim when a BPS [sic] Detective inquired whether or not he had hired an attorney." Doc. No. 18-1 at 12. Rodriguez thereafter hired an attorney and learned of Harrison's employment history. Id. However, Rodriguez does not explain how any of his harms were "inherently unknowable." Indeed, he knew of the harms alleged—that Harrison solicited him to sell drugs at school, that Harrison ordered another student to assault him, and that Harrison shot him—as they were occurring between January and March 2015.

Rodriguez argues that he did not know of Harrison's employment history until he hired an attorney in May 2018, but that alone cannot support application of the discovery rule. See Krasnow v. Allen, 562 N.E.2d 1375, 1380 (Mass. App. Ct. 1990) ("The plaintiff's knowledge was sufficient to stimulate further inquiry on his part about the claim, including inquiry into the facts about [the defendant's] employment status, and, thus, to start the running of the clock."). Given that there is no allegation of "some conscious attempt by the Commonwealth to conceal" Harrison's employment history, the discovery rule does not operate to delay the running of the clock for purposes of presentment. Id.

The Court accepts March 3, 2015 as the latest date upon which Rodriguez's claims arose,[6] and thus presentment was required to be made within two years thereafter. It was not made until June 27, 2018, over three years later. Accordingly, the motion to dismiss is ALLOWED on Counts IV-VIII.

---

[6] The Court notes that Rodriguez's injuries were severe and that he states he "was unable to return, attend, and finish high school." Doc. No. 18-1 at 12. In some cases, similar injuries may be severe enough that a plaintiff would be unable to reasonably learn that they have been harmed by a defendant's conduct for some time thereafter—for example, if the plaintiff is in a coma and unaware of what has happened to them. However, neither party has suggested that this case presents such circumstances.

B. § 1983 Claim

Count I asserts a claim against both BPS and Harrison (in his individual and official capacities) under § 1983 for violations of Rodriguez's Fourteenth Amendment right to bodily integrity. BPS moves to dismiss Count I as asserted against BPS on the grounds that it fails to state a claim for relief under a Monell theory. Rodriguez argues that he has sufficiently pled a claim against BPS under two separate theories.

A "local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id.

Rodriguez first argues that DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189 (1989), is applicable here, where he has alleged that the state failed to protect him from violence. However, the portion of DeShaney which Rodriguez cites deals with cases in which the plaintiff was deprived of liberty where the state took the plaintiff into custody. In fact, the Court held that in such cases,

> [i]n the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

Id. at 200. In this case, Rodriguez does not allege that he was ever taken into custody or otherwise deprived of his liberty by BPS. Accordingly, DeShaney is simply inapplicable.

8

Rodriguez also argues that the extent of BPS's failure to sufficiently supervise, monitor, control or discipline Harrison renders it liable.

> [A] state official, sued under section 1983 in his or her official or individual capacity, can be held liable for the behavior of his or her subordinates if (1) the behavior of such subordinates results in a constitutional violation and (2) the official's action or inaction was affirmatively linked to that behavior in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence *or* gross negligence amounting to deliberate indifference.

Lipsett v. Univ. of Puerto Rico, 864 F.2d 881, 902 (1st Cir. 1988) (emphasis in original). At this stage, Rodriguez need only plead sufficient facts to plausibly allege this claim. This, Rodriguez has done. He alleges that prior to the day in question, BPS was aware that Harrison had physically assaulted at least one student and that he later endorsed recreational drug use with two students, and yet BPS continued to employ Harrison in positions where he had close, unsupervised contact with students, even promoting him.

While BPS issued a written warning for each of the incidents described above, for purposes of a Rule 12(b)(6) analysis, these incidents put BPS on notice that Harrison was engaging in criminal conduct toward students and encouraging students to engage in criminal conduct. While these two incidents reasonably appear to have played a role in Harrison's termination from Boston Green Academy at the end of that school year, BPS immediately placed him in another position where he had unsupervised contact with students. Rodriguez has alleged that Harrison even received a promotion thereafter to Dean of Academies. It was after this time that the events giving rise to this case took place, including Harrison soliciting Rodriguez to sell drugs, ordering another student to assault Rodriguez, and finally shooting Rodriguez in the head. The foregoing facts are sufficient, at this stage of the case, to plausibly allege that BPS was on notice of Harrison's inappropriate—even criminal—behavior toward students, and that it was deliberately indifferent to not remove Harrison from a position where he had unsupervised

9

contact with students or fail to otherwise provide him with additional training or supervision. While the Court notes that the facts in this case do not appear to be as strong as the facts in Lipsett, 864 F.2d 881, the facts in that case were presented at summary judgment, after an opportunity for more extensive discovery. Whether the facts in this case will support the claim after discovery or at trial are questions not now before the Court.

Accordingly, the motion to dismiss is DENIED on Count I.

C.    Title IX Claim

Count II asserts a claim under Title IX. BPS moves to dismiss Count II on the grounds that it fails to state a claim because there are no allegations in the amended complaint relating to gender discrimination. Rodriguez responds that he was the subject of gender discrimination "because BPS officials identified male students, including Mr. Rodriguez as being in need of 'mentorship and guidance' and directed male students to Harrison." Doc. No. 18-1 at 17.

"Title IX prohibits gender-based discrimination in a wide array of programs and activities undertaken by educational institutions." Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 65 (1st Cir. 2002). It provides that generally, no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "Discrimination on the basis of sex is the sine qua non of a Title IX sexual harassment case, and a failure to plead that element is fatal." Frazier, 276 F.3d at 66.

Here, there are no facts in the amended complaint upon which the Court could conclude that Rodriguez was subjected to discrimination on the basis of his gender. The amended complaint alleges that as Dean of Academies, "Harrison's job description included the responsibility to provide leadership in generating and implementing interventions in order to

support students, and to identify appropriate supports for students with academic, behavioral, social and emotional needs." Doc. No. 14 ¶ 32. Additionally, it alleges that "BPS assigned, promoted and encouraged the relationship between Harrison and Mr. Rodriguez, as Mr. Rodriguez had been identified as a disabled and vulnerable student in need of services." Id. ¶ 44. Nowhere in the amended complaint does Rodriguez allege that <u>only</u> male students were referred to Harrison or that <u>only</u> male students were solicited by Harrison to deal drugs at school.[7]

Moreover, the allegations related to Mr. Rodriguez's Title IX claim do not even mention gender, but rather assert that "[a]s a direct and proximate result of Harrison's abuse and solicitation, and BPS's deliberate indifference, Plaintiff was deprived of equal protection of the laws on the basis of his disability." Id. ¶ 88. As BPS notes, the only disability protected by Title IX is blindness or severely impaired vision. 20 U.S.C. § 1684. There is no allegation in the amended complaint that Rodriguez suffered from blindness.

The amended complaint fails to state a claim upon which relief may be granted on Rodriguez's Title IX claim. Accordingly, the motion to dismiss is ALLOWED on Count II.

    D.    <u>Massachusetts Declaration of Rights Claim</u>

Count III asserts a violation of Rodriguez's rights under the Massachusetts Declaration of Rights. BPS moves to dismiss this claim on the ground that there is no private right of action for money damages under the Declaration of Rights. Rodriguez does not address BPS's arguments regarding dismissal of Count III in his opposition.

As a general matter, "the Commonwealth cannot be sued unless there has been a waiver of its sovereign immunity." <u>Sullivan v. Chief Justice for Admin. & Mgmt. of Trial Court</u>, 858

---

[7] The Court does not reach a conclusion regarding whether such facts, if alleged, would be enough to support a Title IX claim, though it notes that Rodriguez has provided no legal authority to support such a conclusion in any event.

N.E.2d 699, 713 (Mass. 2006). "No case, however, has yet recognized a claim for money damages, brought directly under the State Constitution against State officers for actions taken as State officers." Doe v. Sex Offender Registry Bd., 112 N.E.3d 276, 286 (Mass. App. Ct. 2018). Although Rodriguez also seeks "injunctive relief declaring the Defendant shall comply with all disclosure requirements regarding the physical assaults of students," Doc. No. 14 at 18, he has provided no specific basis upon which to award such relief under Count III. Indeed, Rodriguez did not even address BPS's motion to dismiss as it relates to his claim under the Declaration of Rights.

Accordingly, the motion to dismiss is ALLOWED on Count III.

IV. CONCLUSION

For the reasons expressed, the motion to dismiss, Doc. No. 16, is ALLOWED on Counts II-VIII; it is DENIED on Count I.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge