UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LUIS ANGEL RODRIGUEZ, )<br>)<br>   Plaintiff, )<br>)<br>v. )<br>)<br>BOSTON PUBLIC SCHOOLS and )<br>SHAUN O. HARRISON, individually and )<br>in his official capacity, )<br>)<br>   Defendants. )<br>) | Civil No. 19-10116-LTS |

ORDER ON PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT (DOC. NO. 69)

August 5, 2022

SOROKIN, J.

In March of 2015, Shaun Harrison was the Dean of Academics for Boston English High School responsible for "implementing interventions that support [Boston English] students." Doc. No 54-9 at 2.[1] Among other duties, he counseled students. Luis Rodriguez, a high school sophomore at the time, was one such high school student with whom Harrison worked in his role as a Dean at Boston English. Doc. No. 80-1 at 32. Not long after the counseling relationship began, Harrison offered Rodriguez an opportunity to make money by selling "weed" for Harrison. Id. at 76-77. Not only was Harrison's offer illegal, it was a gross abuse of his position of authority and trusting relationship with Rodriguez.

---

[1] Citations to "Doc. No. __ at __" reference items appearing on the court's electronic docketing system, and pincites are to the page numbers in the ECF header.

1

Rodriguez agreed to come to Harrison's home where he learned the financial details of the relationship dictated by Harrison—Harrison would front one ounce of marijuana to Rodriguez for the price of $200 with all proceeds over $200 belonging to Rodriguez. Id. at 77-78. Unsurprisingly, the deal was hardly fair as the going price for marijuana on the street at the time was about $210 per ounce, leaving little room for Rodriguez to profit. Id. at 73. Over time Harrison accused Rodriguez of stealing from him and Rodriguez complained that the deal was unfairly lopsided. Id. at 73, 90.

As these events were unfolding, Rodriguez learned from Harrison that Harrison was a member of the East Coast Latin Kings gang, and that Harrison kept a firearm in his home. Id. at 65, 84. Rodriguez expressed his desire not to associate with either gangs or guns. Id. at 84, 86.

All of the foregoing disagreements culminated on March 3, 2015. Another student attacked Rodriguez in school. Id. at 102-03. The other student accused Rodriguez of "fuck[ing] it up for all of us" while Harrison watched this student administer a beating to Rodriguez. Id. Only when others arrived did Harrison finally intervene. Id. Later that same day, Harrison invited Rodriguez to hang out at Harrison's home with some "girls." Id. at 118. Previously, Rodriguez obtained relationship or dating advice from Harrison. Id. at 49. Rodriguez accepted the invitation as he did not yet harbor any suspicions that Harrison was responsible for the earlier attack and the two met at about 7:15 that evening at the Sunoco Gas Station on Massachusetts Avenue in Boston. Id. at 118, 122. Harrison then made a quick phone call and, while he did so, Rodriguez turned the other way. Id. at 123. At this moment, Harrison shot Rodriguez in the back of his head at point-blank range. Id. at 123-24.

Miraculously, Rodriguez survived through a combination of gritty determination—he plugged the hole in his head with his fingers to stanch the bleeding till a passerby stopped—and

good fortune—the bullet missed his brain stem and carotid artery by two centimeters. Id. at 126-29. All has not been easy though for Rodriguez. He endured two surgeries, spending twelve days in the hospital. Id. at 129. The bullet shattered his jaw, which doctors wired shut for nine months. Id. at 129-30. He remains paralyzed on half of his face, suffers from neuropathy in his neck and face, has had hearing loss, and requires weights on his eye lids to aid in opening and shutting his eyes. Id. at 130, 137-38. The bullet remains lodged in his head causing headaches as well as pain in cold weather. Id. at 137. This is to say nothing of the emotional distress that Rodriguez has endured since the shooting. Rodriguez understandably suffers from post-traumatic stress disorder ("PTSD"), which makes it difficult for him to keep a steady job. Id. at 23-25. After he was prescribed narcotics during his treatment at Boston Medical Center, Rodriguez developed an opiate addiction with which he continues to struggle.

Harrison is in the custody of the Commonwealth of Massachusetts serving a sentence for crimes including assault with intent to murder with a firearm, assault and battery with a dangerous weapon with intent to cause serious bodily injury, and possession of a firearm while committing a felony. Doc. No. 80 at 7 (citing Doc. No. 80-2). Rodriguez's trial testimony aided in securing these convictions, but also has resulted in his ongoing fear of retaliation from the Latin Kings. His Counsel represents that Rodriguez has already survived one attempted hit by a Latin Kings member and lives in fear that he or his family will once again be targeted. Doc. No. 80 at 10-11.

Rodriguez filed this suit against Harrison and the Boston Public Schools seeking compensation. Doc. No. 14. Previously, the Court entered default against Harrison, Doc. No. 30, and summary judgment in favor of the Boston Public Schools, Doc. No. 61. Now, the Court resolves Rodriguez's pending Motion for default judgment against Harrison and an award of

damages.  Doc. No. 69.  Harrison has not responded to the Motion nor sought any relief from the Court in the course of this action.  Rodriguez requests that the Court resolve this motion on the papers.  Id. at 1; Doc. No. 79.

Rodriguez is entitled to judgment on both his 42 U.S.C. § 1983 claim and his state law intentional infliction of emotional distress claim.  Harrison's attempted murder of Rodriguez, which arises from the abuse of the teacher-student relationship, violated Rodriguez's federal rights.  See Doe v. D'Agostino, 367 F. Supp. 2d 157, 172 (D. Mass. 2005) (explaining that a Section 1983 bodily integrity claim can rest upon abuse of a student by a school official).  Harrison's actions leading up to and on the day of the attempted murder more than satisfy the elements of both the Section 1983 claim and emotional distress claim.  See Martinez v. Colon, 54 F.3d 980, 984 (1st Cir. 1995) (citations and internal quotation marks omitted) ("There are two essential elements of an action under section 1983: (i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of rights secured by the Constitution or laws of the United States."); Polay v. McMahon, 10 N.E.3d 1122, 1128 (Mass. 2014) ("To make out a claim of intentional infliction of emotional distress, the plaintiff[ must] show (1) that [the defendant] intended, knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe.").

Both claims entitle Rodriguez to compensatory damages.  These damages aim to make the plaintiff whole for the losses that he suffered because of the defendant's unlawful actions.  After a careful review of the evidence and consideration of the totality of the circumstances the Court makes the following awards of compensatory damages.

First, the Court awards Rodriguez $80,875.43 for his incurred medical bills, which represents the reasonable value of medical expenses reasonably required and actually given to Rodriguez as a result of Harrison's conduct.  Doc. No. 80-3.

Second, the Court awards Rodriguez $7,500,000 for his physical pain and suffering and emotional distress.  This was a terrible and heinous act by Harrison.  Harrison abused a position of trust, responsibility, and authority.  He attempted and almost succeeded in murdering Rodriguez.  The shooting inflicted tremendous pain both at the time and during the aftermath.  The pain will continue for the rest of Rodriguez's life.  Harrison forever changed the way the world sees Rodriguez and the way Rodriguez interacts with others.  His face is half paralyzed and he suffers from PTSD.  These changes are long-lasting and ever-present in Rodriguez's interactions with others.

Thus, the Court awards Rodriguez a total of $7,580,875.43 in compensatory damages.  This award is made under both claims.  While the total damages are $7,580,875.43, the Court finds each claim independently supports that award.  The Court also awards prejudgment interest under state law at the state court rate of 12% per annum from March 3, 2015 to August 5, 2022 (the date of entry of judgment).

Finally, Harrison seeks punitive damages.  Punitive damages are for conduct that is malicious or done with evil motive.  "The purpose of punitive damages . . . is twofold: 'to punish [a wrongdoer] for his outrageous conduct and to deter him and others like him from similar conduct in the future.'"  Pan Am Railways, Inc. v. United States Dep't of Lab., 855 F.3d 29, 38 (1st Cir. 2017) (second alteration in original) (quoting Smith v. Wade, 461 U.S. 30, 54 (1983)).  The facts here plainly establish an entitlement to punitive damages.  Several reasons warrant the Court to impose punitive damages on Harrison: (1) to punish and deter the use of positions of

authority, respect, and trust to lure minors into criminal activities; (2) to punish and deter physical attacks on and attempted murder of minors by defendants in positions of trust and responsibility; and (3) to punish Harrison and deter others from engaging in the type of conduct Harrison committed. These reasons and the totality of the circumstances justify an award of punitive damages of $2,500,000 with prejudgment interest from the March 3, 2015 to August 5, 2022 (the date of entry of judgment).

Previously, the Court commented that Counts I, II, III, IV, VII, and VIII were asserted against Harrison in both his individual and official capacities. Doc. No. 21 at 5 n.5. The Plaintiff only seeks damages against Harrison in his individual capacity on Counts I and VII. Doc. No. 80 at 1-2. Therefore, damages against Harrison are awarded only as to Counts I and VII; default judgment shall enter against Harrison in his individual capacity on Counts I, II, III, IV, VII, and VIII.

The Clerk shall enter final judgment in this case forthwith. The Plaintiff has prevailed against Harrison and thus is entitled to that much of his fees and costs attributable to the suit against Harrison. He may file such a request with supporting documentation within fourteen days.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge

authority, respect, and trust to lure minors into criminal activities; (2) to punish and deter physical attacks on and attempted murder of minors by defendants in positions of trust and responsibility; and (3) to punish Harrison and deter others from engaging in the type of conduct Harrison committed. These reasons and the totality of the circumstances justify an award of punitive damages of $2,500,000 with prejudgment interest from the March 3, 2015 to August 5, 2022 (the date of entry of judgment).

Previously, the Court commented that Counts I, II, III, IV, VII, and VIII were asserted against Harrison in both his individual and official capacities. Doc. No. 21 at 5 n.5. The Plaintiff only seeks damages against Harrison in his individual capacity on Counts I and VII. Doc. No. 80 at 1-2. Therefore, damages against Harrison are awarded only as to Counts I and VII; default judgment shall enter against Harrison in his individual capacity on Counts I, II, III, IV, VII, and VIII.

The Clerk shall enter final judgment in this case forthwith. The Plaintiff has prevailed against Harrison and thus is entitled to that much of his fees and costs attributable to the suit against Harrison. He may file such a request with supporting documentation within fourteen days.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge